No. 46,979

MARY B. JUNGJOHANN, *Appellant,* v. KENNETH R. JUNGJOHANN, *Appellee.*

(516 P. 2d 904)

Opinion filed December 8, 1973.

*Ronald J. Wilkinson,* of Alkire, Clausing, Coldsnow, Bush and Wilkinson of Wichita, argued the cause, and was on the brief for the appellant.

*Jack S. McInteer,* of Weigand, Curfman, Brainerd, Harris and Kaufman, of Wichita, argued the cause, and *Orval J. Kaufman,* of the same firm, was with him on the brief for the appellee.

The opinion of the court was delivered by

KAUL, J.: This appeal is taken from an order of the trial court terminating the obligation of appellee, Kenneth R. Jungjohann, to pay child support for his daughter, Elizabeth Jungjohann. The trial court's order was based upon K. S. A. 1972 Supp. 38-101 which became effective July 1, 1972, and reads:

"The period of minority extends in males and females to the age of eighteen (18) years."

The forerunner statute provided that the age of minority extended to the age of twenty-one with a proviso pertaining to "legally married persons over eighteen years of age."

The facts are not in dispute and the issue presented is purely a question of law.

The controversy arises from a decree on February 2, 1970, granting a divorce to appellant, Mary B. Jungjohann, and approving and incorporating a property settlement and alimony agreement previously entered into by the parties. With respect to custody of and support for Elizabeth, the trial court decreed as follows:

"That the plaintiff is a fit and proper person to have the care, custody and control of the minor child of the parties, to-wit:

"Elizabeth Dailey Jungjohann, born August 5, 1953, and that the defendant shall have all reasonable rights of visitation with said minor child; that the child support payments and other provisions concerning the minor child contained in the Property Settlement and Alimony Agreement shall be approved and adopted by the Court as its order herein and the defendant shall pay $100.00 per month child support through the Clerk of the District Court payable $50.00 on the first day and $50.00 on the 15th day of each month commencing February 1, 1970, and that all provisions concerning the said minor child and child support payments shall be subject to the continuing jurisdiction of this Court."

The agreement, which was attached to the decree of divorce, provided that:

". . . the Husband shall pay through the Clerk of the District Court to the Wife as and for child support the sum of $100.00 per month until said child attains the age of majority. Husband agrees to and shall maintain medical and hospitalization insurance coverage on said minor child during her minority. . . ."

Elizabeth became eighteen years of age on August 5, 1971; as noted the law became effective on July 1, 1972. Kenneth continued his child support payments until August of 1972 when he filed his motion to terminate his obligation. Apparently, a motion not shown in the record was filed by appellant (Mary) to enforce a provision of the agreement wherein the parties stated that they recognized "their sole and joint duty to provide for the higher education of the said minor."

On August 17, 1972, the matter was heard by the trial court. With respect to Kenneth's motion the trial court ruled:

". . . that the child of the parties, Elizabeth Dailey Jungjohann, is of the age of 19 years and that the defendant's duty to support said child ceased as of July 1, 1972, by virtue of Chapter 161 of the 1972 Session Laws amending K. S. A. 38-101, fixing the age of majority at 18 years, the contract of the parties and the order of the Court herein providing that defendant should pay support for the said child 'until said child attains the age of majority.' "

With respect to expenses for Elizabeth's higher education the

court found that Kenneth was to continue to contribute and in this regard further ordered:

"IT IS FURTHER ORDERED that of the $150.00 child support the defendant has paid after July 1, 1972, $75.00 be applied toward the defendant's liability for the first semester, 1972-1973, of higher education expenses as set out in the order of the Court herewith and in reference to the procedure established in the order of August 16, 1971."

The trial court also terminated the right of Kenneth under the original decree to list Elizabeth as a dependency exemption on his income tax returns. These rulings of the trial court were not challenged by Kenneth; but based upon Elizabeth's acceptance thereof, he has filed a motion to dismiss this appeal on the grounds that Elizabeth had acquiesced in the judgment below. Although the court's rulings are included in one journal entry it appears that the matters were presented in two separate motions; but only the ruling on one (Kenneth's) is appealed from. In any event, we choose to pass over this procedural point and resolve the matter on the merits since the question presented is one of first impression in this jurisdiction.

On appeal, appellant states her version of the point at issue in this fashion:

"The ruling of the Court terminating child support payments by the Appellee did not take into consideration the contract between the parties providing for the payment by Appellee of child support until the child attained the age of majority, and the statute fixing the age of majority which was in effect at the time the contract was made." .

Appellant advances several arguments which she claims support her position. She first asserts that our decision in *Smith v. Smith,* 104 Kan. 629, 180 Pac. 231, is sufficient authority to decide the issue here. Appellant's interpretation of the *Smith* decision, as we understand it, is that a statute cannot be enacted which alters the duration of a status previously fixed by law. Application of the rule, in its literal sense, as proposed by appellant would have precluded the enjoyment by eighteen year olds, of any of the rights conferred by the legislation on July 1, 1972, such as voting, contracting, termination of guardianship, etc. Judicial tampering with the age of majority could lead to widespread confusion in this regard. We do not read *Smith* as interpreted by appellant—the situation in *Smith* was converse to that appearing in the instant case. In *Smith* the act of the legislature extended the period of minority

in women to age twenty-one instead of reducing it as in the instant case. The *Smith* case dealt with the interpretation of a divorce decree in which the rents and profits of certain real estate in which a life estate was owned by the husband and father had been set aside for the support of the minor children until the youngest child should become of age. At the time of the decree (1902) the age of majority for women was eighteen years. In 1917 (Chapter 184, Section 1, Laws of 1917) the age of minority was extended to twenty-one years. In 1915 the youngest Smith child, a girl, became eighteen. The father brought suit against the mother and children to recover possession of the said estate. The critical issue in *Smith* was the interpretation of the original unclear divorce decree on the point whether the children were entitled to the rents and profits during the lifetime of the father, as they claimed, or merely to the age of majority of the youngest child. Most of the opinion is devoted to that point, which was resolved in the father's favor. The effect of the change in the law arose when the defendants (mother and children) asserted the action was prematurely brought because even though the youngest child, Nettie, became eighteen in 1915, she was still a minor by reason of the 1917 law extending minority to age twenty-one for women. The court held the new law did not change the "status" of one who had already reached the age of majority under the former law. We discern a marked distinction in the effect of annulling the fixed rights of majority which the court refused to do in *Smith* and advancing the age at which those rights might be enjoyed which is the effect of K. S. A. 1972 Supp. 38-101 in the instant case. We do not believe the decision in *Smith* controls the disposition of the issue here. We have also examined *State, ex rel., v. Lyons*, 104 Kan. 702, 180 Pac. 802, in which it was held that the 1917 act extending the period of minority from eighteen to twenty-one years was not intended to change the "status" of one who had already reached the age of majority under the former law. The condition of minority or majority is a "status" rather than a fixed or vested right, there being no vested property rights in the personal privileges of infancy. Nor can it be said that minority is a fixed status. Under the law in effect at the time of the divorce in the instant case, a minor could acquire rights of majority by marriage (38-101), by a proceeding in district court (K. S. A. 38-108) or by legislative emancipation such as occurred.

The distinction between the privileges of minority and the rights

to which a person is entitled on reaching his majority is expressed in these words in 42 Am. Jur. 2d, Infants, § 1:

". . . Majority is the age at which the disabilities of infancy are removed, and hence a person who has reached his majority is entitled to the management of his own affairs and to the enjoyment of civic rights.

. . . . . . . . . . . . . . .

"Infancy is a status which is created by the law and may be subject to statutory limitations or exceptions. The disabilities of infancy are in fact personal privileges conferred on infants by law, and as such they constitute limitations on the legal capacity of infants, not to defeat their rights, but to shield and protect them from the acts of their own improvidence as well as from acts of others. Minority or majority is a status rather than a fixed or vested right, there being no vested property rights in the personal privileges of infancy. The law intends the privilege of infancy simply as a shield to protect the infant from injustice and wrong, not as a sword to be used to the injury of others." (pp. 8, 9.)

*In re Trust Under Will of Davidson,* 223 Minn. 268, 26 N. W. 2d 223, has long been recognized as a leading case on the subject. The Supreme Court of Minnesota described "majority" as the status or condition of full age whereby one is entitled, at law, to the management of his own affairs and the enjoyment of civic rights. The status of infancy was said to involve no fixed or vested rights and that the disabilities thereof were in fact personal privileges conferred on infants by the law of their domicile. The Minnesota court noted that amendatory legislation extending the age of minority had been held not retroactive so as to affect preexisting substantive rights "arising under a majority status" which had come to fruition before the amendatory act took effect (citing *Smith v. Smith,* supra.)

In the instant case, appellant is attempting to extend the minority of her daughter (Elizabeth) for purposes of child support even though Elizabeth has enjoyed the rights of majority since July 1, 1972.

In this jurisdiction the rule has long been recognized that a child has no claim or vested right in future child support, and that an order extending payments for support of a child beyond the age of majority is void. (*Clark v. Clark,* 191 Kan. 95, 379 P. 2d 240; *Allison v. Allison,* 188 Kan. 593, 363 P. 2d 795; and *Trunkey v. Johnson,* 154 Kan. 725, 121 P. 2d 247.) In the recent case of *In re Estate of Sweeney,* 210 Kan. 216, 500 P. 2d 56, we declined to hold that a decree based on a separation agreement between parents

of minor children constituted a valid claim against the father's estate.

In recent years many states have lowered the age of majority to eighteen years by legislative enactment. While the issue appears for the first time before this court, numerous other jurisdictions have considered the effect of such amendatory legislation on child support decrees, some of which were based upon agreements between the divorced parents as in the instant case. Examination of the cases from other jurisdictions reveals that where child support was decreed during minority or was to terminate on majority a substantial majority have held that the amendatory legislation is effective. That is to say that even though the age of majority was fixed at age twenty-one at the time of the decree, the obligation of support terminated upon the effective date of the act or upon the child attaining age eighteen, which ever the case might be. (*Shoaf v. Shoaf*, 282 N. C. 287, 192 S. E. 2d 299; *Phelps v. Phelps*, 85 N. M. 62, 509 P. 2d 254, *Garey v. Garey*, [Tenn. 1972], 482 S. W. 2d 133; *Fellows v. Fellows*, [La. App. 1972], 267 So. 2d 572.) The rationale of the foregoing cases is fairly shown in the opinion of the Supreme Court of North Carolina in *Shoaf v. Shoaf*, supra. In *Shoaf* the court pointed out that jurisdiction regarding child support and custody (as in Kansas, K. S. A. 1972 Supp. 60-1610 [a]) remains with the court until the death of one of the parties to the divorce or until the youngest child marries or reaches the age of majority. The *Shoaf* court further reasoned and cited authorities as follows:

". . . Hence neither the parent nor the infant has any vested right in a support order which would extend the payments beyond the age of emancipation. In *Layton v. Layton*, supra, this Court in discussing a consent order to support a minor, said that nothing indicates the father bound himself to do anything beyond his legal liability to support his son.

" 'The rule is settled beyond a doubt that majority or minority is a status rather than a fixed or vested right and that the Legislature has such power to fix and change the age of majority.' *Valley National Bank v. Glover*, 62 Ariz. 538, 159 P. 2d 292.

"Change from minority to majority in legal effect means that legal disabilities designed to protect the child are removed. . . ." (p. 290.)

Continuing jurisdiction and provisions for the custody, support and education of minor children in this jurisdiction are governed by the provisions of 60-1610 (*a*), *supra*. The statute contemplates that such provision for the children is to be made only during their minority. (Author's commentary, Gard, Kansas Code of Civil Pro-

cedure Annotated 1973 Supp. § 60-1610 [a], p. 207.) We believe the reasoning of the North Carolina Court is particularly appropriate in the instant case, in the light of the provisions of 60-1610 (a) and the previous Kansas cases heretofore referred to.

The minority view is expressed in *Vicino v. Vicino,* 30 Conn. Sup. 49, 298 A. 2d 241, wherein the superior court of Hartford County Connecticut, appears to have taken a diametrically opposed view. (See, also, *Baker v. Baker,* 80 Wash. 2d 736, 498 P. 2d 315.) In *Waldron v. Waldron,* (Ill. App. 1973, 301 N. E. 2d 167), the Illinois Court of Appeals affirmed a trial court's decision in which the court concluded "that the intention of the parties was that support should continue until the age of twenty-one." Likewise, in several cases the Court of Appeals of Kentucky has held that child support payments should continue until age twenty-one when the evidence at the trial disclosed that such was intended or contemplated by the parties. (*Kirchner v. Kirchner,* [Ky. Ct. App. 1971], 465 S. W. 2d 299; *Worrell v. Worrell,* [Ky. Ct. App. 1973], 489 S. W. 2d 817.)

In the instant case, the trial court made no specific finding as to the intent of the parties; basing its ruling on the fact that the contract of the parties and the order of the court herein provided that defendant should pay support for the said child until such child attains the age of majority.

Appellant contends the trial court's ruling violates K. S. A. 1972 Supp. 77-201, *First,* which provides *inter alia:*

"*First.* The repeal of a statute does not revive a statute previously repealed, nor does such repeal affect any right which accrued, any duty imposed, any penalty incurred, nor any proceeding commenced, under or by virtue of the statute repealed. . . ."

Appellant says that this court has consistently applied the principle enunciated in the statute with respect to fact situations involving fixed rights which have accrued under statutes prior to amendment, citing *Bartlett v. Heersche,* 209 Kan. 369, 496 P. 2d 1314, and decisions of similar import. Appellant's analysis of this court's application of the principle is correct. The trouble with her argument is that the principle is not applicable here. As we have previously stated the rights of minority are not fixed or vested rights but privileges subject to termination. The ruling of the trial court terminated support payments prospectively from and after July 1, 1972. No application was made nor order entered herein which attempted to operate retrospectively back to the eighteenth birthday of Eliza-

beth. The statute made eighteen the age of majority from and after July 1, 1972. It affected no rights accrued before that date. It did not reach back to make a person an adult from and after his eighteenth birthday but only operated from and after the effective date of July 1, 1972.

We hold that whereby a decree of divorce a defendant is required to make child support payments until a child has reached her age of majority the duty imposed by such decree is terminated by K. S. A. 1972 Supp. 38-101 on the effective date thereof if prior thereto the child had become eighteen years of age.

The judgment of the trial court is affirmed.