## RUTH SILLMAN *v.* EUGENE SILLMAN

HOUSE, C. J., LOISELLE, MACDONALD, BOGDANSKI and LONGO, Js.

Argued December 3, 1974—decision released March 18, 1975

*Marshall S. Feingold,* with whom, on the brief, was *Joel Freedman,* for the appellant (defendant).

*Paul L. Behling,* with whom was *Robert B. Fried,* for the appellee (plaintiff).

BOGDANSKI, J. This controversy arises from a 1967 judgment granting a divorce to the plaintiff, Ruth Sillman, awarding her custody of her four minor children and ordering the defendant, Eugene Sillman, to pay "$150 per month . . . for each of his minor children." In May, 1973, the plaintiff filed a motion for contempt alleging that the defendant had "failed . . . to pay for the support of the minor child, Emily" since October of 1972. To that motion

the defendant filed a special defense alleging that Public Acts 1972, No. 127, § 1, now General Statutes § 1-1d, changed the age of majority from twenty-one to eighteen years, effective October 1, 1972; that Emily was over eighteen years of age on that date; and that he was therefore relieved of all legal responsibility for her support. On June 12, 1973, the defendant moved to modify the judgment regarding support for a second child, Jane, who turned eighteen years of age on June 2, 1973, claiming that he was, as a matter of law, no longer responsible for her support. The trial court overruled the special defense and denied the motion to modify on the basis of *Vicino* v. *Vicino,* 30 Conn. Sup. 49, 298 A.2d 241. The defendant has appealed to this court from those rulings. The issues presented in both rulings are practically identical. Only the denial of the motion to modify, however, is properly before us. The overruling of a special defense is merely an interlocutory ruling. See *Guerin* v. *Norton,* 167 Conn. 282, 283, 355 A.2d 255. The question before us is whether court-ordered support to a "minor" child terminates as a matter of law when a child reaches the age of eighteen after the effective date of the act.

The defendant contends that the purpose and intent of the act was to give eighteen-year-olds full status as adults; that by so doing, the legislature relieved parents of all responsibilities for eighteen-year-olds; that it would be illogical to grant them full status as adults and, at the same time, retain parental responsibility for their support; that when eighteen-year-olds were still considered minors, support payments were made to the parent; that since they are now considered adults, the support payment would presumably have to be made directly to the

emancipated child; that neither parent would be able to exercise control over the payments; and that this would result in the anomalous situation wherein a parent would have to support an eighteen-year-old, but would have no control over his person.

Section 1-1d of the General Statutes (§ 1 of the act) reads in part as follows: "[O]n and after October 1, 1972, the terms 'minor,' . . . shall be deemed to refer to a person under the age of eighteen years and any person eighteen years of age or over shall be an adult for all purposes whatsoever and have the same legal capacity, rights, powers, privileges, duties, liabilities and responsibilities as persons heretofore had at twenty-one years of age, and 'age of majority' shall be deemed to be eighteen years." There are eighty-two other sections in the act which repealed numerous sections of the statutes and substituted new language conforming to the purpose and intent of the act. At the heart of this controversy, however, is § 83 of the act (§ 1-1e of the General Statutes) which provides as follows: "Nothing in this act shall impair or affect any act done, offense committed or right accruing, accrued or acquired, or an obligation, liability, penalty, forfeiture or punishment incurred prior to . . . [October 1, 1972], and the same may be enjoyed, asserted and enforced, as fully and to the same extent and in the same manner as they might under the laws existing prior to said date, and all matters civil or criminal pending on said date . . . may be continued . . . under and in accordance with the provisions of the law in force at the time of the commission of said act done, offense committed, right accruing, accrued, or acquired, or obligation, liability, penalty, forfeiture or punishment incurred."

The plaintiff contends that child support is a substantive right; that the language of the "saving clause" is plain and unambiguous; and that that language expresses a legislative intent to continue support orders entered prior to the effective date of the act until the child reaches age twenty-one, the former age of majority.

"It is a cardinal rule of construction that statutes are to be construed so that they carry out the intent of the legislature. . . . [That] intent is to be ascertained from the language of the statute itself, if the language is plain and unambiguous." *Hurlbut* v. *Lemelin,* 155 Conn. 68, 73, 230 A.2d 36; *Wright* v. *Brown,* 167 Conn. 464, 468, 356 A.2d 176; *Kellems* v. *Brown,* 163 Conn. 478, 515, 313 A.2d 53; *United Aircraft Corporation* v. *Fusari,* 163 Conn. 401, 410, 311 A.2d 65. Except for the general saving clause, General Statutes § 1-1e (§ 83 of the act), and a few specific saving clauses,[1] every section of the act is consistent with the expressed legislative intent to make eighteen-year-olds adults "for all purposes whatsoever." General Statutes § 1-1d (§ 1 of the act). Under the act an eighteen-year-old may vote, borrow money, sell or buy liquor, and engage in licensed occupations. Once the child reaches eighteen years of age, guardianship is terminated; General Statutes § 45-43 (§ 66 of the act); and parents no longer have a legal duty to support the child. General Statutes §§ 17-320, 53-304 (§§ 29 and 76 of the act).

The plaintiff argues that certain statements made on the floor of the house at the time the act was

[1] See, e.g., General Statutes § 45-96a (§ 73 of the act) which states that the word majority as used in a will or trust instrument prior to the effective date of the act is to be construed to mean a person who has attained the age of twenty-one.

introduced support her contention that the legislature intended to continue previously ordered support payments until age twenty-one.[2] The intention or state of mind of an individual member of the legislature, however, is not conclusive even when it can be ascertained. *Toll Gate Farms, Inc.* v. *Milk Regulation Board,* 148 Conn. 341, 348, 170 A.2d 883. The intent of the legislative body is to be found not in what it meant to say, but in what it did say. *Schwab* v. *Zoning Board of Appeals,* 154 Conn. 479, 482, 226 A.2d 506.

To interpret the saving clause, General Statutes § 1-1e, to mean that a divorced parent must continue to pay child support until the child reaches age twenty-one would be inconsistent with the broad purposes of the act. Under such an interpretation the eighteen-to-twenty-year-old "adult" would still be considered a minor for purposes of support yet would be free of his parent's custody and control. In interpreting a statute, the application of common sense is not to be excluded. *Knoll* v. *Kelley,* 142 Conn. 592, 596, 115 A.2d 678. "The entire enactment must be examined and its parts reconciled and made operative so far as possible." *United Aircraft Cor-*

---

[2] Reference is made to 15 H.R. Proc., Pt. 5, 1972 Sess., p. 2078, wherein Representative Albert R. Webber stated that "this bill provides that nothing which had heretofore been done on the basis of the present age of the [sic] majority of 21 years shall be impaired. This means, for example, that court decrees in effect before the effective date of this act providing for the support of minors shall apply until the age of .21." But see the previous paragraph on the same page wherein Representative Webber stated that orders for support will cease at age eighteen. See also 15 S. Proc., pt. 3, 1972 Sess., p. 1057, wherein Senator William E. Strada, Jr., commented that the "[b]ill imposes responsibilities as well as granting privileges." He then listed examples including the reduction to eighteen of the age at which children are no longer covered by the support statutes.

*poration* v. *Fusari,* supra, 411. When more than one construction is possible, we adopt the one which makes the statute effective and workable, and not one which leads to difficult or bizarre results. *Kellems* v. *Brown,* supra, 506; *City Savings Bank* v. *Lawler,* 163 Conn. 149, 159, 302 A.2d 252.

The saving clause speaks of protecting rights "accruing, accrued, or acquired" and obligations. Court-ordered support payments to "minor children" do not fall within that language for two reasons. First, the order to pay child support in a divorce judgment is not a final adjudication of the rights and duties of the parent and the minor child. The court has continuing jurisdiction to modify such an order. Public Act No. 74-169 § 8, repealing Public Act No. 73-373 § 15 (formerly § 46-23 of the General Statutes); see *Raymond* v. *Raymond,* 165 Conn. 735, 737, 345 A.2d 48; *Cleveland* v. *Cleveland,* 165 Conn. 95, 100, 328 A.2d 691. Such an order "does not operate to crystallize or limit the duty of the parent to support his minor child, but merely defines the extent of his duty during the life of the order." *Rosher* v. *Superior Court,* 9 Cal. 2d 556, 559, 71 P.2d 918. The life of the support order in this case was, if not modified sooner, limited to the period of the child's "minority," as that word is defined by the legislature. It is true that the parties and the court may have expected that the children would remain minors until they reached age twenty-one, but the legislature has now precisely fixed the age of majority at eighteen. Saving clauses do not save such expectations. 82 C.J.S., Statutes, § 440; see 16 Am. Jur. 2d, Constitutional Law, § 423.

Second, the condition of minority "is a status rather than a fixed or vested right, there being no

vested property rights in the personal privileges of infancy." 42 Am. Jur. 2d 9, Infants, § 1; see *Jungjohann* v. *Jungjohann*, 213 Kan. 329, 333, 516 P.2d 904; 43 C.J.S., Infants, § 19. The North Carolina Supreme Court, confronted with a similar statute and preexisting support order, stated that "neither the parent nor the infant has any vested right in a support order which would extend the payments beyond the age of emancipation. . . . 'The rule is settled beyond a doubt that majority or minority is a status rather than a fixed or vested right and that the Legislature has such power to fix and change the age of majority.' *Valley National Bank* v. *Glover,* 62 Ariz. 538, 159 P.2d 292." *Shoaf* v. *Shoaf,* 282 N.C. 287, 290, 192 S.E.2d 299. The Vermont Supreme Court, reviewing a similar fact situation, held as follows: "Nor does the statute fixing the period of minority at the time of the entry of the original decree operate to vest any rights. Minority is a status subject to change by legislative enactment. . . . The status of the Beaudry children is defined not by the decretal order of 1959, but by the terms of 1 V.S.A. § 173. They will attain their majority at the age of eighteen, and the court is without power to order provision for their support . . . beyond that age." *Beaudry* v. *Beaudry,* 132 Vt. 53, 58, 312 A.2d 922. In addition to the *Shoaf* and *Beaudry* cases, supra, other jurisdictions have held that even though the age of majority was fixed at age twenty-one at the time of the decree ordering child support payments, the obligation of support terminated upon the effective date of the act lowering the age of majority, or upon the child's attaining age eighteen, whichever the case may be. *Speer* v. *Quinlan,* 96 Idaho 119, 525 P.2d 314; *Rice* v. *Rice,* 213 Kan. 800, 518 P.2d 477; *Jungjohann* v. *Jungjohann,*

supra; *Fellows* v. *Fellows,* 267 So. 2d 572 (La. App.) ; *Phelps* v. *Phelps,* 85 N.M. 62, 509 P.2d 254; *Garey* v. *Garey,* 482 S.W.2d 133 (Tenn.).

In the *Rice* and *Jungjohann* cases, supra, the argument was raised that statutes affecting substantive rights are not to be applied retrospectively to affect any right accrued or any duty imposed, and that the new age of majority statute; Kan. Stat. Ann. § 38-101 (Sup. 1972) ; was such a statute. The saving clause involved in those cases; Kan. Stat. Ann. § 77-201 (Sup. 1972) ; is similar to our General Statutes § 1-1e, and provided as follows: "The repeal of a statute does not . . . affect any right which accrued, any duty imposed, any penalty incurred, nor any proceeding commenced, under or by virtue of the statute repealed." The Kansas Supreme Court disposed of that argument by pointing out that it was not applicable. "As we have previously stated the rights of minority are not fixed or vested rights but privileges subject to termination. . . . The statute made eighteen the age of majority from and after July 1, 1972. It affected no rights accrued before that date. It did not reach back to make a person an adult from and after his eighteenth birthday but only operated from and after the effective date of July 1, 1972." *Jungjohann* v. *Jungjohann,* supra, 335–36; see *Rice* v. *Rice,* supra, 804–805.

We find the above rationale to be sound on both a legal and public policy basis. We recognize that some courts, including our own Superior Court, have taken a different view. See *Vicino* v. *Vicino,* 30 Conn. Sup. 49, 298 A.2d 241; *Field* v. *Field,* 291 So. 2d 654 (Fla. App.) ; *Waldron* v. *Waldron,* 13 Ill. App. 3d 964, 301 N.E.2d 167; *Kirchner* v. *Kirchner,*

465 S.W.2d 299 (Ky. App.); *Baker* v. *Baker,* 80 Wash. 2d 736, 498 P.2d 315. Those cases, however, have not recognized the inconsistency in continuing support orders for eighteen-to-twenty-year-olds who are adults for all other purposes; nor have they recognized that minority is a status. We do not agree with the conclusion reached by the court in *Vicino* v. *Vicino,* supra.

We therefore conclude that minority is a status with no fixed, vested or accrued rights in *future* support; that the saving clause in § 1-1e of the General Statutes does not authorize either a parent or the emancipated child to enforce court-ordered support for a "minor" child once the child has reached eighteen years of age; and that court-ordered support for a "minor" child terminates when that child reaches the age of eighteen on or after October 1, 1972.

There is error and the case is remanded with direction to grant the defendant's motion to modify.

In this opinion the other judges concurred.