Sheilah R. KOCHEROV, Appellant,

v.

Sam H. KOCHEROV, Respondent.

No. WD 41534.

Missouri Court of Appeals,
Western District.

July 25, 1989.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 29, 1989.

Robert J. Wise, Wise & Ford, Kansas
City, for appellant.

Linda S. Tarpley, Berman and Singer,
Kansas City, for respondent.

Before TURNAGE, P.J., and CLARK
and FENNER, JJ.

TURNAGE, Presiding Judge.

This case presents the question of whether a judgment for child support may be modified to terminate support after the passage of a statute which provides that the obligation to make support payments shall terminate when a child reaches 18.

The trial court answered in the affirmative and this court agrees. Affirmed.

There is no dispute as to the facts. Sheilah Kocherov and Sam Kocherov were married in 1962. There were two children born of the marriage. A judgment dissolving the marriage was entered on November 18, 1986. As one child was emancipated by marriage at the time of the judgment, only one child was eligible for child support. The judgment incorporated an agreement between the parties by which Sam agreed to pay $200 per month for the support of the child, Jason, until the child became emancipated, reached the age of 21, or until further order of the court which ever should first occur. At the time the judgment was entered, case law in this state had established that child support is payable until the child reaches the age of 21. *Biermann v. Biermann*, 657 S.W.2d 65, 66–67 (Mo.App.1983).

In 1988, the legislature adopted § 452.340.3, Supp.RSMo 1988, effective August 13, 1988, which provides that the obligation of the parent to make child support payments shall terminate, so far as concerns this case, when a child reaches age 18.

In November, 1988, Sam filed a motion to modify the judgment by terminating child support on the ground that Jason had reached the age of 19.[1] There is no contention that any of the statutory reasons to extend support beyond 18 exist. The court sustained the motion to terminate child support because the child had reached the age of 19.

Before taking up the reasons assigned by Sheilah as to why the court should not have terminated the support order, it is well to review the law applicable to agreements providing for child support. In *Kelly v. Kelly*, 329 Mo. 992, 47 S.W.2d 762, 768 (banc 1932), the court held that as to future support of minor children, "neither the mother nor father, nor both combined, have any power by contract or agreement to control . . ." the court's action in setting or

modifying the amount of child support. In *Williams v. Williams*, 542 S.W.2d 563, 566[1–3] (Mo.App.1976), this court stated:

> Even though the terms of a separation agreement with regard to child support are adopted by the court and incorporated into a divorce decree, the court is not deprived of its authority to thereafter modify such support award, as changed conditions may warrant.

This court further noted that the power of the court to modify a judgment for child support is embodied in § 452.370, now RSMo 1986, which provides that support judgments may be modified as to installments accruing subsequent to the motion for modification on a showing of a change of conditions. Section 452.325, RSMo 1986, provides that agreements between the parties may be set forth in the judgment, but that the terms concerning support shall not preclude or limit modification of those terms by the court.

In *Sheahan v. Sheahan*, 721 S.W.2d 81, 86[7] (Mo.App.1986), the court held that the parties may agree that child support can be extended beyond the majority of the child. In short the parties may agree to do more for the child than the law requires, and the court will not interfere with that undertaking, but as to the obligation required by law to pay child support during the minority of the child, the court has full power to modify the amount of support as conditions warrant.

■ Thus, the law in this state is well settled that parents may not 'enter into an agreement for the payment of child support which will deprive the court of its power to set the amount of support and to change that amount as conditions change. Therefore, agreements for child support differ from other contracts because the law prevents the parents from entering into a binding agreement for support, except for obligations which are above and beyond that which the law requires. This is in contrast to the law of contracts which does not allow a court to modify its terms on a showing of a change in conditions.

1. Jason became 18 on March 29, 1987.

■ It is important to note the unique character of agreements providing for child support, because Sheilah in her brief has cited a large number of cases involving contracts and the inability of the court to alter the terms of those contracts. Obviously, contract law has no application to agreements providing for child support.

■ Further, because judgments providing for child support may be modified by the court, there can be no vested right in a parent or a child to receive child support. In *Dowling v. Dowling*, 679 P.2d 480, 482[1] (Alaska 1984), a case involving the same facts as here, the court stated:

Since a child support order is modifiable after judgment upon a showing of substantial change in circumstances, a child's right to future, unaccrued installments of child support is not a vested right.

In *Beaudry v. Beaudry*, 132 Vt. 53, 312 A.2d 922, 925[5, 6] (1973), the court held that a judgment for child support is not a final judgment because the court has power to modify its terms according to changes in circumstances. The court said such judgments are necessarily provisional and temporary and hence do not constitute a final adjudication of the rights of parent and child. The court concluded that no rights vested in a support judgment, and hence, no rights were divested when the age of majority was changed.

■ *Dowling* and *Beaudry* are consistent with the law in Missouri. Thus, the judgment in 1986 did not vest any rights in Sheilah to receive child support for any definite time. By the same token, a change in the age when child support terminates did not divest her of any rights.

In this case Sam agreed to pay $200 per month child support for Jason until Jason reached the age of 21. This agreement was subject to the approval of the court and the court did approve the agreement and incorporated it into the judgment. It is apparent, however, that Sam did not agree to do anything beyond what the law required—that is to support his minor child until the child reached the age of 21. However, as noted above, the agreement was subject to modification by the court on a showing of a change in conditions.

■ Sheilah first contends that § 452.340.3 should not be applied retroactively to terminate child support at 18 when the law at the time the judgment was entered required support to be paid to age 21.

In *Jungjohann v. Jungjohann*, 213 Kan. 329, 516 P.2d 904, 909[4] (1973), the court considered an identical situation as presented here. The court answered the argument of retroactive application of a statute lowering the age of majority to 18 by stating that the judgment terminating support payments operated prospectively. The court said no attempt was made to take away any support payments which had accrued prior to the effective date of the statute, nor did the statute reach back to make a person an adult from and after his eighteenth birthday, but only operated from the effective date of the statute which lowered the age of majority.

In *Schmitz v. Schmitz*, 70 Wis.2d 882, 236 N.W.2d 657, 662[8] (1975), the court answered the retroactive argument by holding that the law lowering the age of majority did not require the return of payments made prior to the effective date of that statute. The court concluded that for that reason retroactive application was avoided. In *Stanley v. Stanley*, 112 Ariz. 282, 541 P.2d 382, 383[3, 4] (banc 1975), the court held that a statute lowering the age of majority from 21 to 18 was neither prospective nor retrospective in its operation because it affected all minors upon its effective date. The court held that until the effective date of the statute the age of majority was 21 and there was nothing in the statute which declared that the new age of majority should have retroactive application. The court concluded that child support previously ordered in a judgment would terminate on the effective date of the change of the age of majority. Both *Schmitz* and *Stanley* considered the same question presented here.

This court agrees with the reasoning of *Jungjohann*, *Schmitz*, and *Stanley* that the statute terminating child support at

age 18 does not operate retrospectively because it does not purport to change any rights or obligations which had accrued prior to its effective date. It only applied to payments due after the effective date of the change which Sheilah had no vested right to receive.

■ Sheilah next contends that § 1.170 and § 1.180, RSMo 1986, prevent the support payments from being terminated. Section 1.170 provides that the repeal of any statutory provisions shall not affect any act done or right accrued nor established in any suit prior to the time the repeal takes effect. Section 1.180 provides that no action pending at the time any statutory provisions are repealed shall be affected by the repeal. As pointed out above, the judgment was subject to modification, and therefore, no vested rights had accrued in future installments of child support.

In passing on a similar contention under the same facts as are present in this case, the court in *Sillman v. Sillman*, 168 Conn. 144, 358 A.2d 150, 154[9, 10] (1975), held that the saving statute of Connecticut, similar to that in Missouri, did not prevent a statutory change in the age of majority from terminating the obligation to pay support because judgments for child support are subject to modification and do not operate as a final adjudication of the rights and duties of the parent or the minor child. *Id.* 358 A.2d 153[5–7]. The court said that the life of the support order was limited to the period of the child's minority and the parties may have expected that the child would remain a minor until it reached the age of 21, but the legislature had now fixed the age of majority at 18. The court held that savings statutes do not save such expectations. *Id.*

*Jungjohann* also held that the savings statute does not prevent child support payments from terminating when the legislature establishes a new age of majority. *Id.* 516 P.2d 909[4].

This court agrees with *Sillman* and *Jungjohann* that the passage of the act lowering the age when support payments terminate does not violate the saving statutes of this state. The statute does not deprive Sheilah of any accrued right or payment. It simply operates to terminate future payments at an earlier time than anticipated when the judgment was entered.

■ Sheilah further contends that the change in the age at which child support terminates is not a change of condition which would authorize modification of the judgment to terminate support payments. In *Shoaf v. Shoaf*, 282 N.C. 287, 192 S.E.2d 299, 303[12] (1972), in considering the same question, the court noted that judgments for support are subject to review upon a change of conditions. The court held that the legislature had "unequivocally changed the conditions by fixing a different date upon which liability to support a child terminated." *Id.* In *Schmitz* the court stated "[a] legislative declaration of adulthood, carrying the complementary release of support obligations, is the clearest change of condition." *Id.* 236 N.W.2d 662[11, 12]. In *Cason v. Cason*, 271 S.C. 393, 247 S.E.2d 673, 675[2, 3] (1978), again considering the same question, the court held that a constitutional and statutory change in the age of majority "clearly changed the conditions affecting the obligation for support under the decree by fixing a different date upon which liability to support a child terminated." This court finds the reasoning in *Shoaf, Schmitz,* and *Cason* to be persuasive and holds that the change in the age on which the obligation to pay child support terminated was a change in condition which authorized a modification of the judgment.

In this case Sam did not agree to pay support any longer than the law required nor did he agree to do anything beyond that required by the law. In *Rice v. Rice*, 213 Kan. 800, 518 P.2d 477, 482[4] (1974), the court followed its holding in *Jungjohann* by holding that when a father agreed to make child support payments until the child reached its majority, and such agreement did not express an intent to incur a greater liability than that imposed by law, the obligation to pay support terminated when the child reached 18, even though the

decree was entered prior to the effective date of the statute lowering the age of majority.

As disclosed in 75 A.L.R.3rd 228 (1977), a number of states such as Florida, Georgia, California, Oregon, West Virginia and Michigan passed statutes lowering the age of majority but expressly provided that the change did not affect any judgments theretofore entered. Obviously, cases from those states hold the change in the age of majority do not affect judgments entered prior thereto. Other cases holding that support payments in a judgment previously entered do not terminate on the passage of a statute changing the age of majority fall into two categories. The first are cases in which the judgment is based upon an agreement of the parties and the court enforces the contract. Those cases do not comport with Missouri law because they do not recognize the inability of parents to require courts to sanction their agreement.

The second category are cases that hold that parents or children have a vested right to receive support payments once the judgment is entered. This concept also runs counter to the law of this state, because the power of the court to modify payments prevents those affected from accruing a vested right to receive future payments.

Sheilah contends that *Hubbard v. Hubbard,* 264 S.W. 422 (Mo.App.1924), is an identical case to this and the court there refused to apply a change in the age of majority to a judgment which had been entered prior to the change. *Hubbard* was decided on strictly contract law and not the law applicable to judgments for child support. *Hubbard* involved an action on a bond which was given as security for the payment of child support. The court said the rule is that a contract is to be construed in light of the law as it existed at the time the obligation was entered into. *Id.* 423[1, 2]. This demonstrates the court was applying contract law. The court expressly declined to rule on the question now presented when it stated that it was not called upon to decide what effect the change in the age of majority would have on the provision for child support contained in the judgment. *Id.* 424. Thus, *Hubbard* did not decide the question presented in this case.

*Biermann* stated that any legislative change in the age of majority would not apply to an existing decree and cited *Hubbard* as authority.[2] *Id.* at 67[3, 4]. This was dicta, and further as stated above, the court decided *Hubbard* on contract law and did not reach the issue raised in this case. Because the statement in *Biermann* is dicta, and *Hubbard* does not support the conclusion reached, this court declines to follow *Biermann* on that point.

This court holds that Sheilah had no vested right to receive future child support payments and therefore when the legislature provided that the obligation to pay child support terminated when the child reached the age of 18, a change of condition occurred which authorized the court to modify the judgment to terminate child support payments payable thereafter.[3] Further, no accrued rights were affected by the change in age so that the statute does not have retrospective application and the savings statutes are not offended.

The judgment is affirmed.

All concur.

---

2. In *Biermann* a father attempted to terminate child support by contending a change in the guardianship law making 18 the age of majority applied to child support judgments. The holding of that case rejected such contention.

3. The court terminated future payments in this case on a motion to modify. No view is expressed on whether the obligation terminates on a child reaching 18 without a judgment entered pursuant to a motion to modify.