Virginia Frances MASON,
Plaintiff–Appellant,

v.

John W. MASON, Defendant–Respondent.

No. 63722.

Missouri Court of Appeals,
Eastern District,
Division Three.

April 5, 1994.

Jack F. Allen, Clayton, for plaintiff-appellant.

Rochelle Kaskowitz, St. Louis, for defendant-respondent.

PUDLOWSKI, Judge.

John and Virginia Mason have been separated for ten years. Their child, Kelly Ann Mason [hereinafter daughter], who will be twenty-one years old on June 1, 1994, has been in and out of schools and has a history of stress-related problems.

In 1985, Mr. Mason (respondent) and Mrs. Mason (appellant) entered into a nonmodifiable separation agreement which was later incorporated into a dissolution decree. Respondent agreed to keep appellant on his employer-provided insurance program for as long as they remained legally separated and to provide her with insurance at his expense should he convert the decree of separation into a decree of dissolution of marriage. He also agreed to provide daughter with insurance and to pay $800 per month in child support until daughter reached age twenty-one or was emancipated, whichever came first. At the time, he was earning $669 per week and appellant was earning approximately $120 per week.[1]

On June 28, 1991, respondent sought to convert the decree of separation into a decree of dissolution of marriage and to modify the contractual and decretal agreement on the grounds that his physical health and the lack of work made it increasingly difficult to continue working sufficient hours to enable him to pay $800 a month in child support and that he would not be able to afford to provide appellant with insurance at his expense after the divorce was finalized. Respondent, who was employed as an ironworker for thirty-seven years, had developed heart and blood pressure problems, tendinitis in the elbow joints and had surgery on both of his knees. His statement of income, filed August 30, 1991, indicated that in 1991 he was earning approximately $410.60 per week. (This would calculate to $21,351.20 per year; however, respondent's tax return showed that he earned $29,557.44 in 1991.) Appellant's income at the time was approximately $214.10 per week.

The trial court converted the decree of separation into a decree of dissolution of marriage and terminated respondent's obligation to provide appellant with insurance. It also reduced the child support payments from $800 to $100 a month, extended the payments until daughter reached twenty-two but conditioned them on daughter's enrollment and attendance in school, and *retroactively ordered respondent to render the payments directly to daughter.* This appeal followed. We affirm in part and reverse in part.

█ Citing *South Side Plumbing Co. v. Tigges,* 525 S.W.2d 583, 589 (Mo.App.St.L.D. 1975), appellant erroneously contends that because this case involves largely documentary evidence, there is no need for this court to defer to the findings of the trial court and *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976), does not provide the applicable standard of review. We do not agree. *Murphy,* which eradicated the de novo and clearly erroneous standards in court-tried cases, *Id.* at 32, has been consistently applied to cases of this kind. *See, In re Marriage of Short,* 847 S.W.2d 158, 166 (Mo.App.S.D. 1993) (citing *Buchanan v. Buchanan,* 828 S.W.2d 946, 949 (Mo.App.W.D.1992)); *Hamilton v. Hamilton,* 817 S.W.2d 937, 939–40 (Mo.App.W.D.1991). Furthermore, because some of the testimony at trial contradicted the documentary evidence, the trial court's assessment of the credibility of the parties is crucial. The trial court's decree will, therefore, stand unless there is no substantial evidence to support it, it is against the weight of the evidence, or it involves an erroneous application or declaration of the law. In reviewing this case, we give deference to the trial court's determination as to the witnesses' credibility and, the evidence, with all of the inferences flowing therefrom,

---

1. All income figures are taken from the parties' statements of income and are based on gross salary. We note that the statements of income and the tax returns contain several inconsistencies.

is viewed in the light most favorable to the judgment.

We affirm the conversion of a decree of separation into a decree of dissolution of marriage.

Next, we address appellant's claim that the trial court erred when it terminated respondent's obligation to provide appellant with insurance. The relevant part of the separation agreement, which was later incorporated into the dissolution decree, reads as follows:

Husband agrees to keep his wife as insured, on his health insurance policy obtained through his employer so long as husband and wife remain legally separated. Husband agrees to keep his daughter, Kelly Ann Mason, as insured on the same policy until she reaches the age of 21 years or becomes legally emancipated. In the event husband converts the decree of legal separation to a decree of divorce, husband agrees to maintain a policy of insurance on his wife at his expense. In the event his wife converts the decree of legal separation to a decree of divorce, husbands [sic] obligation to provide health insurance for his wife shall terminate but shall continue for Kelly Ann Mason until she reaches the age of 21 years or becomes emancipated. In the event wife obtains insurance through an employer, husband is relieved of his obligations to provide her with insurance.

This agreement shall be contractual and non-modifiable by the court.

Appellant claims that in terminating respondent's duty to provide her with insurance the court overstepped its powers as the contract was expressly nonmodifiable. In response, respondent argues first that the insurance provision contradicts the waiver of maintenance provision in the separation agreement. We disagree. Although insurance is a form of maintenance, *See, McAvinew v. McAvinew,* 733 S.W.2d 816, 818–19 (Mo.App.W.D.1987), and appellant generally waived maintenance, respondent's explicit agreement to provide her with insurance set insurance apart from other forms of maintenance.

Respondent further replies that the agreement is vague and unenforceable since it fails to specify the type of insurance that he must provide if he converts the decree of separation into a decree of dissolution of marriage. He cites *Echele v. Echele,* 782 S.W.2d 430, 436–37 (Mo.App.E.D.1989), and *Wilson v. Farrow,* 583 S.W.2d 545, 546 (Mo. App.E.D.1979), in support of his contention that contractual provisions which do not spell out the boundaries of an agreement are not enforceable. These cases, however, are distinguishable. In *Echele,* our court held that the lower court's order requiring father to pay for part of his children's post-secondary education was too uncertain and vague to be enforceable, 782 S.W.2d at 436–37. At the time the agreement was executed, however, the children were still in grade school. The trial court, therefore, had no point of reference or limiting criteria to enable it to define the terms of the father's obligation. We noted in *Echele* that there is a great disparity between the tuition at a vocational school, community college or a private school. Similarly, in *Wilson,* the court found that a party's agreement to pay for the paving of a road was "so lacking in definiteness and specificity as to render it meaningless and impossible to enforce," 583 S.W.2d at 546. In that case the court noted that because "[t]here were no terms as to the time when the road was to be paved, the materials to be used, the width, depth or length of the road … [and because] none of the witnesses' testimony shed any illumination on these critical factors … there [was] no way to measure the extent of defendant's liability regarding the road." *Id.* at 546. In the case at hand, however, respondent provided his wife with insurance throughout their marriage and legal separation. Based on the couple's history and the absence of any contrary language in the separation agreement, we may assume that the parties intended that respondent provide insurance which is comparable to the employer-subsidized insurance after the divorce was finalized.

Respondent's argument that he was unaware that he was agreeing to such a long-term and nonmodifiable requirement is also insupportable. Missouri law is clear that absent a showing of fraud, a party who is

capable of reading and understanding a contract is charged with the knowledge of that which he/she signs. *State ex rel. St. Louis Car Co. v. Hughes,* 348 Mo. 125, 152 S.W.2d 193, 197 (1941) (citations omitted); *Taylor & Martin, Inc. v. Hiland Dairy, Inc.,* 676 S.W.2d 859, 871–72 (Mo.App.S.D.1984) (citation omitted). The boiler-plate language exception is inapplicable under the facts in this case since both parties were represented by attorneys and the nonmodification clause was in clear, unambiguous, easy-to-read type.

 Finally, we address respondent's argument that the trial court was correct in relieving him of his obligation to provide wife with insurance due to changed circumstances. Separation agreements are considered enforceable contracts. *See,* § 452.325.2; 5 RSMo 1986. Section 452.325.6 RSMo 1986 grants parties the right to enter into nonmodifiable agreements as long as they do not concern the support, custody or visitation of children. *See, Kocherov v. Kocherov,* 775 S.W.2d 539, 540 (Mo.App.W.D.1989). Absent a showing of unconscionability or contravening public policy the court should not interfere with a couple's nonmodifiable contractual or decretal agreement. *Rogers v. Rogers,* 743 S.W.2d 130, 131 (Mo.App.S.D.1988) (citations omitted); *Seip v. Seip,* 725 S.W.2d 134, 136 (Mo.App.W.D.1987). " 'Unconscionability' [is] inequality so strong, gross, and manifest that it must be impossible to state it to one with common sense without producing exclamation at the inequality of it." *Peirick v. Peirick,* 641 S.W.2d 195, 197 (Mo.App.E.D. 1982) (quoting *Carter v. Boone County Trust Co.,* 338 Mo. 629, 92 S.W.2d 647, 658 (banc 1935)). In this case, the court found that the agreement was conscionable when it incorporated the agreement into its decree. A nonmodifiable agreement which the court found was conscionable at the time of its execution does not suddenly become unenforceable due to changed circumstances. Accordingly, absent mutual consent, a party cannot later try to selectively repudiate sections of the agreement. Once a nonmodifiable agreement is executed, it constitutes a binding legal obligation.

 We now move to the issue of child support. The separation agreement provided:

> The parties agree, after examining all relevant factors, that it is reasonable for husband to pay the sum of $200 per week for the support of Kelly Ann Mason. These payments shall continue until Kelly Ann Mason shall reach the age of 21 years or become legally emancipated, whichever shall come first. For purposes of this agreement Kelly Ann Mason·shall be considered emancipated when she does any of the following:
>
> 1. Reaches the age of 21 years
> 2. Dies
> 3. Enters into marriage
> 4. Enters into full time employment or joins the Armed Forces of the United States on active duty.

We begin by noting that unlike maintenance, parties cannot enter into nonmodifiable agreements concerning child custody, visitation or support. *Kocherov,* 775 S.W.2d at 540. Accordingly, respondent's agreement to pay $800 per month in child support is considered "advisory," *Goodman v. Goodman,* 576 S.W.2d 747, 751 (Mo.App.E.D.1979) (citations omitted), and remains within the purview of the court's discretion even though the court incorporated the agreement into its decree. *Williams v. Williams,* 542 S.W.2d 563, 566 (Mo.App.K.C.D.1976) (citations omitted). Nevertheless, the court will not meddle with a couple's clear intention to do more for a child than is required by law. *Kocherov,* 775 S.W.2d at 540 (citing *Sheahan v. Sheahan,* 721 S.W.2d 81, 86 (Mo.App.E.D. 1986)). Appellant erroneously contends that this is such a case. In the agreement, respondent consented to provide $800 per month in child support until daughter attains the age of twenty-one. This was the required minimum severance age for child support at the time the agreement was executed. *Kocherov,* 775 S.W.2d at 540 (citing *Biermann v. Biermann,* 584 S.W.2d 106, 107 (Mo.App.E.D.1979) *declined to follow on other grounds in Kocherov,* 775 S.W.2d at 543) (citation omitted)).[2] On August 13, 1988, the

---

2. When the agreement was executed in 1985, Chapter 452 of Missouri's statutes did not define

legislature lowered the minimum cut-off age to eighteen. Contrary to appellant's assertions we do not read the language in the agreement as a concession by respondent to do more for his child than is required by law because the necessary comparison is with the law at the time the contract was executed.[3] In fact, the cut-off age in a contract falling under similar facts was lowered from twenty-one to eighteen due to the change in law. *See, Kocherov,* 775 S.W.2d at 543. Because the contract does not evidence the parties' intention to do more than was required by law, the court had the power to modify the child support despite the nonmodification clause in the contract.

■ Appellant also claims that respondent failed to satisfy his burden of showing that a substantial and continuing change occurred which would give the court the power to alter the child support payments. We can address this issue since it relates not to the amount of the support but rather to the court's right to modify the support payments in any manner. *Bell v. Gilliam,* 852 S.W.2d 198, 200 (Mo.App.S.D.1993). A substantial and continuing change of circumstances is automatically found "if the application of the guidelines and criteria set forth in Supreme Court rule 88.01 to the financial circumstances of the parties would result in a change of child support from the existing amount by twenty percent or more...." § 452.370.1 RSMo Cum.Supp.1993. In this case, a rough calculation of Form 14 suggests that respondent, who was paying $800 a month in child support, would only be required to pay approximately $250 a month under the guidelines.[4] Because the difference between these two amounts is clearly over twenty percent, the court had the power

to modify the award. *See, Bell,* 852 S.W.2d at 201. Furthermore, evidence was presented that father's income was steadily declining due to his physical problems and daughter had begun working thirty-two hours a week. The trial court may have also found that these factors evidenced a change in circumstances.

■ Whether the court reduced the payments by an appropriate amount, however, is a separate question which we may not address due to the parties' apparent failure to submit a Form 14 to the trial court and to include this form in their legal file on appeal. *Ibrahim v. Ibrahim,* 825 S.W.2d 391, 398 (Mo.App.S.D.1992); *Zalmanoff v. Zalmanoff,* 862 S.W.2d 941, 947 (Mo.App.E.D.1993). Such a failure is "akin to pursuing a different theory for recovery on appeal than was pursued at trial," *Ibrahim,* 825 S.W.2d at 398. A party is bound on appeal by the position he/she took in the trial court, *Spicer v. Farrell,* 650 S.W.2d 695, 697 (Mo.App.S.D.1983) (citation omitted), since we will not convict a lower court of error on an issue it was not given an opportunity to decide. *Ibrahim,* 825 S.W.2d at 398 (citations omitted). Appellant's arguments concerning the amount of child support were not properly raised, they were not properly preserved and, as such, they may not be reviewed. *Id.; Zalmanoff,* 862 S.W.2d at 947.

Although we are precluded from reviewing the amount of the payments, we may discuss the other terms which were altered by the trial court. Appellant contends that the trial court erred in ordering that respondent pay the child support directly to daughter. We agree.

---

the word "minor." The age at which child support was terminated was, therefore, determined by case law. *Biermann v. Biermann,* 657 S.W.2d 65, 66–67 (Mo.App.E.D.1983) (citing *Biermann I,* 584 S.W.2d at 107.)

3. Appellant also argues that at the time of the execution of the contract, the parties expected that the minimum cut-off age for child support would eventually be lowered to eighteen. She claims that the agreement was an attempt to "protect" their child from such a change in the law because they believed that she would not be

able to care for herself at age eighteen. We find no support for her contention in either the agreement or the transcript and we will not decide cases based on statements from the briefs which are unsupported by the record.

4. The parties in this case did not include a copy of Form 14 in their legal file and we do not know if they ever submitted this form to the trial court. However, we do know that the trial court utilized the Form 14 since it noted in its order that the application of the guidelines would be unjust under the circumstances.

■ Section 452.340.5 RSMo Cum.Supp. 1993 provides that if a child is enrolled in a secondary or post-secondary institution, the child or his/her obligated parent may petition the court to order that the obligated parent make the payments directly to the child. In enacting this statute, however, the legislature could not possibly have meant that in a case *sub judice* in which a child attends school but still lives in the custodial parent's home, the court may order that the obligated parent pay the *full* support amounts directly to the child. The inherent problems with such an interpretation of this statute are well-evidenced by the situation in the case at hand. Appellant adduced evidence at the hearing that although her daughter had recently began a full-time job, she consistently refused to contribute towards family expenses and she was generally poor at managing her money. Appellant was, therefore, attempting to maintain the family home solely on her salary of $856.40 per month while the daughter resided with her. Child support is to be used to aid the custodial parent to pay the reasonable expenses of a child. Accordingly, in a case in which a child lives in his/her parent's home, the parent should directly receive at least a portion of the child support. However, in a case such as this one, in which the child support payments barely provide sufficient funds to defray the costs of the child's food,[5] and the evidence indicates that the child is generally poor at managing the money in his/her possession, the custodial parent should receive the entire amount so that he/she can oversee the proper use of these funds. We, therefore, find that respondent should make the payments directly to appellant. *See, Umphenour v. Umphenour,* 831 S.W.2d 764, 768 (Mo.App.W.D.1992).

■ Appellant also claims that the trial court erred in conditioning the child support payments on daughter's enrollment and attendance in school since daughter's emotional problems have pervaded her life and continue to constitute extenuating circumstances necessitating unconditional support past age eighteen. As evidence, appellant notes that daughter attended Al Anon and other counseling after her father went into Alcoholics

Anonymous in 1980 and, that after he left the family home in 1983, daughter began experiencing almost daily fainting spells. The doctors said that daughter's physical problems were linked to stress. Then, in 1990, daughter refused to leave her bed for a period of three months. She was consequently hospitalized at St. Anthony's Stress Center where she attended numerous counseling sessions. It was also around this time that daughter dropped out of high school, although she received her equivalency degree in March 1991. She enrolled in college classes in the fall of 1991 only to drop them a few weeks later. She moved out of her mother's home and then returned two months later. She also took on a job as a waitress which also only lasted a few weeks. As to daughter's current situation, we know that approximately a month before the hearing she began a new job. The week of the hearing she enrolled in nine hours of college classes and she has not had any counseling since March 1990.

■ Although a child who is not attending secondary school or college is ordinarily not qualified to receive child support past age eighteen, § 452.340.3(5), § 452.340.5 RSMo Cum.Supp.1993; *Beeler v. Beeler,* 820 S.W.2d 657, 661 (Mo.App.W.D.1991), a child with severe emotional problems may qualify for continual support under § 452.340.4 RSMo Cum.Supp.1993. The parent's duty to provide such extraordinary support is triggered by the "helplessness of the child." *Fower v. Fower Estate,* 448 S.W.2d 585, 586 (Mo.1970). Accordingly, a child's disability must actually render the child *unable* to earn a living in any type of job. A twenty year old's lack of commitment towards college or employment would, therefore, not, in and of itself, signal that the child has special needs requiring extraordinary support. *See, Harris v. Rattini,* 855 S.W.2d 410, 412 (Mo.App. E.D.1993) (child's learning disabilities or disinclination to work do not constitute "incapacities" under § 452.340.4 RSMo Cum.Supp. 1993). Daughter obviously had severe emotional problems between 1983 and 1990. She has not, however, undergone any counseling since she was discharged from St. Anthony's Stress Center in March 1990 and her mother

---

**5.** The trial court reduced the payments to $100 per month.

has not claimed that daughter continues to this day to suffer from fainting spells and self-induced restraints. Finally, although daughter did not testify, the trial court had the opportunity to assess the parents' credibility while they testified regarding daughter's present condition and, in light of the supporting evidence, we defer to its determinations. We, therefore, find that the trial court properly conditioned daughter's support on her continued enrollment and attendance in school.

Since it is not clear from the record when respondent ceased making partial or full payments, this matter must be remanded to the trial court to determine the total amount of child support, if any, that respondent is obligated to pay to appellant.

We reverse the judgment in part, ordering respondent to continue providing insurance coverage for appellant and pay directly to appellant the child support. We affirm the trial court's judgment in all other respects. Costs assessed to respondent.

SIMON, P.J., and KAROHL, J., concur.