Timarie (Horrocks) McLAUGHLIN,
Respondent,

v.

Howard C. HORROCKS, Appellant.

No. WD 48539.

Missouri Court of Appeals,
Western District.

Sept. 6, 1994.

R. Brian Hall, Gladstone, for respondent.

Jeffrey S. Eastman, Gladstone, for appellant.

Before ULRICH P.J., and LOWENSTEIN and HANNA, JJ.

LOWENSTEIN, Judge.

This appeal involves review of the trial court's decision modifying a dissolution decree increasing the amount of child support. Horrocks (Appellant) moved for a downward modification of child support of the couple's minor children ages ten and five. His former wife, McGlaughlin (Respondent), countered with a motion for an upward modification of support. The trial court increased the child support amount by a total of $300.00 per month, the monthly cost of child care. Using Form 14's income shares model, the trial court calculated the parties respective amounts as follows: Appellant was to pay $200 of the 300 dollar increase with Respondent to pay $100 of the increase. With this increased amount ($200) included, Appellant's total amount of child support was increased from $606.00 per month to $806.00 per month. The trial court found this increase was warranted by evidence of a change so substantial and continuing as to make the existing support amount unreasonable. The child care costs were incurred by Respondent because she started work at a job outside the home.

The Appellant presents two points on appeal. First, that the trial court, in computing the amount of the child support under Form 14, failed to consider the parties pre-existing agreement in regards to maintenance for which the Appellant had already paid. This agreement, entered into the original dissolution decree, stated that Appellant would pay periodic maintenance until both children were enrolled in school on a full time basis. Respondent then secured a bond and obtained prepayment of this amount from Appellant in satisfaction of his maintenance obligation. Appellant contends that his prepayment of this maintenance amount was actually a prepayment of the child support obligations towards the future child care expenses, and that Respondent breached such

maintenance agreement when she took a job outside the home. However, Appellant's contention is not supported by any evidence on the record and the maintenance agreement did not, on its face, contain any requirement that Respondent not take a job outside the home in order to get the maintenance payments. Appellant claims that the trial court's failure to consider these maintenance payments in making the child support calculations renders the trial court's result unjust and inappropriate.

Second, he claims the trial court's increasing his child support obligation by three hundred dollars a month was not supported by competent or substantial evidence.

This court does not find the result of the trial court's computation under Form 14 to be unjust or inappropriate, and affirms the judgment of the trial court.

### Standard of Review

■ In a review of a court-tried child support determination, the trial court's ruling will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *McMickle v. McMickle*, 862 S.W.2d 477 (Mo.App.1993); citing *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976).

### 1. The agreement between Appellant and Respondent

■ Appellant first contends that the trial court erred in failing to consider his maintenance payment under a pre-existing agreement between he and Respondent setting forth the conditions of maintenance obligations from Appellant to Respondent in calculating the child support amounts under Form 14. The agreement between Appellant and Respondent apparently stated that Appellant would pay periodic maintenance until both children were enrolled in school on a full time basis, which the parties agreed would be September, 1994.

After this agreement, Respondent filed a motion to require Appellant to post security for the forthcoming maintenance payments.

The motion was granted, and Appellant satisfied the payment of the bond from his share of the proceeds from the sale of their marital residence ($7,500).

■ Appellant contends his child support obligation should be reduced via his prepayment of maintenance and the motion court should not have considered any child care costs incurred by Respondent in calculating the Form 14 amount because he had, in essence, prepaid her to stay home with children through September, 1994. Since Respondent chose to go to work instead of staying home with the children pursuant to their maintenance agreement, Appellant argues that he should not be required to pay a portion of the child care costs which were, essentially, a result of her breach of that agreement. Appellant argues that his child support obligation should have then been reduced to $588.00 per month. Instead, the court did consider the additional child care costs, and increased Appellant's obligation to $806.00 per month. The trial court allowed no consideration to the maintenance agreement in determining the child support modification. An agreement between the parties concerning child support amounts is not binding on the court in determining a calculation under Form 14. *Loveland v. Henry,* 700 S.W.2d 846, 849 (Mo.App.1985). However, this prior agreement was made with regard to **maintenance, not child support.** Maintenance and child support are mutually exclusive ... maintenance payments are made for the benefit and support of the spouse, while child support payments benefit only the children ... therefore, any payment of maintenance should not affect an action for child support in any way.[1] Therefore, this court finds that the trial court correctly excluded the evidence of the maintenance agreement in calculating the amount of child support modification under Form 14.

■ However, even if this agreement would have expressly been earmarked for child support, it would not be binding on the court in this type of action. *State ex rel Bramlet v. Owsley,* 834 S.W.2d 868, 871 (Mo. App.1992). In *Mora v. Mora,* 861 S.W.2d 226, 228 (Mo.App.1993), this court expressly held that absent court approval, an alleged agreement between both divorced parties relieving one of child support obligations was unenforceable as it related to a subsequent modification action. Furthermore, in *Kastner v. Kastner,* 781 S.W.2d 257, 258 (Mo.App. 1989) this court held that in no case could a mother and father enter into a binding agreement to reduce child support that would accrue in the future. If the agreement in the instant case would have been properly labeled for a modification of child support and not maintenance, it would have nevertheless been non-binding on this court in a modification action. The reason for this rule of law was clearly stated by this court in *Kocherov v. Kocherov,* 775 S.W.2d 539, 540 (Mo.App.1989). *Kocherov* reasoned that parents could not enter into an agreement for payment of child support because that would deprive the court of its power to set the amount of support and to change that amount as conditions change and the court sees fit. *Id.*

The point is denied.

### 2. Insufficiency of the evidence

■ Appellant next contends that the trial court's computation of the amount under Form 14 was not supported by sufficient evidence. When the court looks at Form 14 to calculate a modification of child support amounts, it is bound under Section 454.-500(3), RSMo (Cum.Supp.1994). Section 454.500(3) states:

[i]f the application of the guidelines and criteria set forth in Rule 88.01 to the finan-

1. Under Missouri's maintenance statute, § 452.-335, RSMo (Cum.Supp.1994), the standard for awarding temporary or permanent maintenance to a spouse is "need", which must be proven by the spouse seeking the maintenance. The purpose behind the statute is to provide support for the payee spouse until he or she can adequately support him or herself. Considered in the determination are: the standard of living during the

marriage; the duration of the marriage; the financial resources of the party seeking maintenance; the ability of the payor spouse to pay the maintenance; and the conduct of the party seeking maintenance during the marriage. *Id.*

There is no requirement or consideration given to children's expenses or other child support issues under this maintenance statute.

cial circumstances of the parties would result in a change of child support from the existing amount by 20% or more, then a prima facie showing has been made of a change of circumstances so substantial and continuing as to make the present terms unreasonable.

*Id.*

 In *Raines v. Raines,* 583 S.W.2d 564, 568 (Mo.App.1979), the court ruled that if the trial court did not err by *not* considering Appellant's prepayment of his maintenance obligation in a modification action, an award of child support *must* take into account child care expenses which will be required if the custodial parent is to work. Therefore, in this case the trial court properly considered the additional anticipated child care costs in calculating the reasonable needs of the children to be $300.00 per month. In adding this amount into the calculations, Appellant's amount of support under Form 14 increased from $606.00 per month to $806.00 per month. This increase is approximately 24%, thus meeting the above statutory requirement creating a presumption in favor of modification.

Once the above presumption is met, the burden shifts to the payor to prove inability to meet the payments. More specifically, where the payor spouse has not shown inability to meet his own financial needs while continuing to meet child support obligations, he has failed to prove that the terms of the decree, either original or as modified, are unreasonable and unjust. *In re Marriage of Stanley,* 793 S.W.2d 487, 488–89 (Mo.App. 1990), rehearing, transfer denied. In the instant case, Appellant did not attempt to prove his inability to pay for the support amounts, and the court found he had a monthly gross income of $2,825.00—an amount determined adequate to handle the increased child support obligation.

In addition, in *Stanley,* the court points out that "the paramount concern of the Court of Appeals in determining whether to modify child support decree is the welfare of the children, not the welfare of the ex-husband or ex-wife". *Id.* at 488.

This court holds that the same rationale should apply to this case and the 20% statu-

tory presumption was met and not rebutted by Appellant, thus the trial court's modification calculations were not unjust or inappropriate. Accordingly, this court denies Appellant's second point.

 Additionally, it is worth mentioning that because the "agreement" between Appellant and Respondent as discussed in part one above, is a maintenance agreement, this court does not find that the trial court's order of additional child support caused an unfair "double-dipping" of Appellant. Although Appellant rightfully argues, and it is uncontested that he did indeed pay the money owed under the maintenance agreement in advance pursuant to the security bond, this payment should have no bearing on a subsequent action for modification of child support because the money was not paid in satisfaction of a child support obligation. However, the correct approach for Appellant here would have been to have moved for a modification or termination of the **maintenance** agreement, **not** a modification action for a reduction in **child support.** It is not for this court to decide what the result would have been had Appellant properly categorized his action.

Both of Appellant's points are denied, and the judgment is affirmed.