**In re the MARRIAGE OF D.R.S. and P.W.S.**

**D.R.S., Petitioner–Respondent,**

**v.**

**P.W.S., Respondent–Appellant.**

**No. 17253.**

Missouri Court of Appeals, Southern District, Division Two.

Sept. 20, 1991.

Motion for Rehearing or Transfer to Supreme Court Denied Oct. 7, 1991.

Application to Transfer Denied Nov. 19, 1991.

Gary W. Lynch, Verna Lee Haun, Douglas, Lynch, Munton & Haun, P.C., Bolivar, for petitioner-respondent.

Donald G. Cheever, Marshfield, for respondent-appellant.

MAUS, Judge.

The marriage of D.R.S. (Mother) and P.W.S. (Father), was dissolved on April 18, 1988. Their two children, T.R.S., born July 30, 1972, and T.S.S., born January 26, 1970, were placed in the custody of the mother. The mother was awarded child support of $27.69 per week per child. The father stopped paying child support for T.S.S. after T.S.S.'s graduation from high school in June 1989. The mother instituted proceedings to enforce the award of child support. The father then filed a "Motion for Determination of Emancipation" as of the graduation of T.S.S. from high school. A hearing was held upon that motion. The trial court denied the motion. The trial court found T.S.S. "is mentally incapacitated from supporting herself and who is insolvent and unmarried." By implication, it extended the father's support obligation pursuant to § 452.340.4. The father appeals.

The following is an outline of the background facts. T.S.S. lived with her parents until their marriage was dissolved. She has continued to live with her mother. In

early 1988, T.S.S. experienced a form of mental illness. As a result, she was hospitalized for six weeks in the Marian Center. She was placed on medication. She sees a psychiatrist once a month. When she is taking the prescribed medication, T.S.S. can function. However, it is necessary that she have supervision to see that she does take her medication. When she does not take that medication, her condition has been described in the following terms.

"[By Petitioner's Attorney]: Q. And how is she effected [sic]?

[Petitioner D.R.S.]: A. She's very hateful, belligerent. She cries a lot, wants to know—she asks questions of why this and why that and gets very depressed, threatens to take her own life, she doesn't sleep, she walks continuously, she won't even lay [sic] down—

\* \* \* \* \* \*

Q. Okay. And how did it happen she got off her medication?

A. She—I thought she was taking it. I was giving it to her, and I found out that she didn't want to take it; so, she was just going in the bathroom and flushing it.

\* \* \* \* \* \*

Q. How did she act at this time?

A. Very hateful, belligerent. She shakes a great deal. She—I can't explain it. Her hands tremble, her voice trembles, she cries, she doesn't make any sense at all when she's off of her medication."

During what would have been her senior year in high school, because of her mental illness, T.S.S. could attend school only for a limited time. It was necessary for her to go an extra year to graduate. In her final year in high school, she was in a C.O.E. program in which it was necessary that she have a job. She worked as a housekeeper at a local motel.

Since graduation, T.S.S. has continued to work as a housekeeper at a motel. Due to her illness, her ability to work regularly is impaired. At one time, her supervisor excused her from work for 30 days. She earns $3.80 per hour. In 1989, her gross earnings were $3,451.05. In the first 10 months of 1990, her gross earnings were $4,312.60.

As stated, T.S.S. lives with her mother. Her mother provides her with a home. The mother pays for the food, utilities, medicine and a monthly doctor bill of $70.00. T.S.S. buys her own clothing. She has an automobile on which she makes the monthly payments. Her mother pays for the insurance. T.S.S. is saving for a new car. To the date of trial, she had saved $1,500.00.

Additional facts will be noted as necessary in consideration of the father's four points on appeal.

■ The father's first point is that "the trial court erred in holding that [T.S.S.] was mentally incapacitated from supporting herself because there was no substantial evidence to support such a holding in that there was no evidence produced at trial that [T.S.S.'s] mental condition prevented her from supporting herself."

The relevant portions of the applicable statute provide:

"3. Unless the circumstances of the child manifestly dictate otherwise and the court specifically so provides, the obligation of a parent to make child support payments shall terminate when the child:

\* \* \* \* \* \*

(5) Reaches age eighteen, unless the provisions of subsection 4 or 5 of this section apply.

4. If the child is physically or mentally incapacitated from supporting himself and insolvent and unmarried, the court may extend the parental support obligation past the child's eighteenth birthday." § 452.340.

The father primarily supports his first point by arguing there was no medical testimony to establish that T.S.S. was mentally incapacitated and that such incapacity prevented her from supporting herself. He also argues that such incapacity is not established by the fact T.S.S. was seeing a psychiatrist and was on medication. The essence of his argument is as follows. "However, there was no medical evidence

as to why the medication was being taken. It is just as possible to conclude that [T.S.S.] was taking the medication to keep her docile enough so that she would remain at home so her mother could collect child support, as it is to conclude that [T.S.S.] was taking the medication for a real medical condition." He further contends that the mother's testimony, admitted over his objection, that in her opinion T.S.S. could not live by herself, manage her own finances or take her own medication was inadmissible and should not have been considered.

The mother does not, by her brief, support the admissibility of that testimony. In view of the unquestioned evidence, it is not necessary for this court to develop that issue.

The father's argument ignores the unquestioned evidence which supports the determination of the trial court. The most basic item of such evidence is a copy of "Letters of Guardianship for Incapacitated Person" for T.S.S., admitted in evidence without objection. These letters are dated March 9, 1988. The issuance of the letters of guardianship established that the Probate Division of the Circuit Court, pursuant to the stringent requirements of § 475.075, adjudicated T.S.S. to be an incapacitated person. Pursuant to the stringent procedural requirements,

> "[a]n **'incapacitated person'** is one who is unable by reason of any physical or mental condition to receive and evaluate information or to communicate decisions to such an extent that he lacks capacity to meet essential requirements for food, clothing, shelter, safety or other care such that serious physical injury, illness, or disease is likely to occur. The term **'incapacitated person'** as used in this chapter includes the term **'partially incapacitated person'** unless otherwise specified or apparent from the context;". § 475.010(8).

One of the effects of such an adjudication is declared to be: "A person who has been adjudicated incapacitated or disabled or both shall be presumed to be incompetent...." § 475.078.3. Also see *Schuler*

*v. Schuler,* 290 S.W.2d 192 (Mo.App.1956). There was no evidence to rebut that presumption. Indeed, the unquestioned evidence recited above demonstrates that the status of T.S.S. as "an incapacitated person" by reason of her mental condition continues. The father's first point has no merit.

■ His second point is that the evidence is insufficient "in that there was no evidence at trial as to the cost of supporting" T.S.S. He cites *In re Marriage of Maupin,* 600 S.W.2d 686 (Mo.App.1980), as declaring the necessity of such evidence. That dissolution case, in which the court was called upon to fix the amount of child support, is not controlling. In this case the amount has been fixed. The issue is whether or not the parental support obligation should be extended because T.S.S. cannot support herself. There is evidence of T.S.S.'s meager earnings. The evidence also establishes that the mother supplies virtually all of the living expenses of T.S.S. and yet T.S.S. has been able to save only $1,500.00 to be used to replace her automobile. From the evidence, the trial court could reasonably conclude T.S.S. was incapacitated from supporting herself. The second point is denied.

■ The father's third point is that the trial court erred in determining that T.S.S. was insolvent in that

> "there was no substantial evidence to support such a holding in that the only evidence produced at trial concerning [T.S.S.'s] assets or debts was testimony that [T.S.S.] had the sum of $1,500 in the bank."

By their briefs, the parties agree an acceptable definition of "insolvency" is "the inability to pay debts as they become due in the ordinary course of business." They cite *Adams v. Richardson,* 337 S.W.2d 911 (Mo.1960). The same facts that establish T.S.S. cannot support herself establish she cannot meet the obligations she necessarily incurs in the ordinary course of living. The third point is denied.

■ The father's final point is

> "[t]he trial court erred in failing to hold that [P.S.'s] duty to support [T.S.S.] end-

ed when she reached age 21 because it erroneously applied Missouri law which states that the duty to support an adult dependent child is not cognizable in a dissolution case to which the child is not a party, in that the trial court's holding did not terminate [P.S.'s] duty to support [T.S.S.] at age 21 despite the fact that [T.S.S.] was not a party to the action."

To support this point, he cites *Kelly v. Kelly*, 329 Mo. 992, 47 S.W.2d 762 (banc 1932), 81 A.L.R. 875 (1932) and *Faulkner v. Faulkner*, 559 S.W.2d 545 (Mo.App.1977). He further supplies the following quotation:

> "The power of a divorce court to provide for the support of a child ends when the child attains majority, (citations omitted), even if the child is incapacitated, (citations omitted), at least when the child is not a party." *Cole v. Estate of Armstrong*, 707 S.W.2d 459, 462 (Mo. App.1986).

Those cases were decided before 1988. In that year, subsections 3 to 6 were added to § 452.340. Subsection 4, in part, provides "the court may extend the parental support obligation past the child's eighteenth birthday." The father argues this "should be construed to synchronize its meaning with this preexisting common law." He obviously refers to the cases holding that the duty to pay child support, fixed by a dissolution decree, terminated when the child became 21 years old.

The argument is self-defeating. In the cases relied upon, the parental support obligation in favor of the other parent terminated at age 21. There was no statute authorizing an extension of this obligation in favor of the other parent after the child attained majority. Under the 1988 amendment, the obligation of child support, fixed by a dissolution decree, terminates when the child "[r]eaches age eighteen, unless the provisions of subsection 4 or 5 of [§ 452.340] apply." § 452.340.3(5). Subsection 4 provides "the court may extend the parental support obligation past the child's eighteenth birthday." See *Stelling v. Stelling*, 769 S.W.2d 450 (Mo.App.1989); *Trimble v. Trimble*, 750 S.W.2d 519 (Mo.

App.1988). It is not necessary for this decision to correlate these provisions with all of the aspects of the duty of a parent to support a disabled adult child. See *Fower v. Fower Estate*, 448 S.W.2d 585 (Mo.1970); *Hunter v. Schwertfeger*, 407 S.W.2d 606 (Mo.App.1966); Annot., "Postmajority Disability as Reviving Parental Duty to Support Child", 48 A.L.R.4th 919 (1986). Subsection 4 contains no age limitation. This court can find no basis to determine it was the intent of the legislature to impose an unwritten limitation of the age of 21 years. Cf. *Bollinger v. Bollinger*, 778 S.W.2d 15 (Mo.App.1989). The last point is denied and the judgment is affirmed.

FLANIGAN, C.J., and SHRUM, J., concur.