**Samuel Clayton KING, Appellant,**

v.

**Anita Sue KING, Respondent.**

**No. WD 54333.**

Missouri Court of Appeals,
Western District.

June 23, 1998.

Allan Seidel, Trenton, for Appellant.

Corey Herron, Trenton, for Respondent.

HANNA, Presiding Judge.

The father, Samuel Clayton King, challenges the judgment entered on April 8, 1997, in the circuit court of Harrison County. The trial court found that the parties' adult child, Darrin, was not emancipated because he is mentally incapacitated, unmarried, and unable to support himself financially. Accordingly, the court found that a continuing duty exists for the father to provide support for the parties' adult child. The father appeals that determination, claiming that the evidence demonstrates that Darrin is employed, can handle his personal needs, and requires only occasional coaching on his job. Furthermore, the father argues that Darrin is solvent because the evidence illustrates that he is paying his monthly bills and is able to move from his mother's residence. We affirm.

The parties' marriage was dissolved on June 27, 1985. The marriage produced two children who were placed in the primary physical custody of their mother, Anita Sue King. The father was ordered to pay child support. In December 1995, the father filed a motion to modify requesting the court declare Darrin, who was then 18 years of age, emancipated. He claimed that Darrin had graduated from high school, was not pursuing additional education, and was employed. The mother responded that Darrin is incapacitated and insolvent. She further requested an increase in support.

The trial evidence showed that Darrin was born on June 19, 1976, and graduated from high school through a special education program in May 1995. He has been tested and found to have a full scale I.Q. of 67. He received special training through vocational rehabilitation, and previously had worked sorting cans for recycling. Darrin's current job, obtained January 17, 1996, is washing dishes at Graceland College in Iowa. He works part-time, is paid the federal minimum wage, and averages about $450 per month.[1] Darrin occasionally requires the assistance of a job coach to meet the needs of his job, but is reported to be doing well.

Darrin lives with his mother and his emancipated adult sister in Lamoni, Iowa. His paycheck is deposited directly into his mother's account. He receives Supplemental Security Income benefits, based on his income and Medicaid, of approximately $136.50 per month. His mother testified that Darrin's

---

1. The number of hours that Darrin can work a month varies greatly, depending on whether students wish to work, and whether school is in session. He works as few as 25 hours per month during the summer. Darrin's total gross income for 1996 was $5422.

budget allows him to pay approximately one-third of the household expenses, which total about $1550 per month. She also testified that Darrin requires supervision with his money, otherwise, he would spend it on video games and would not pay his monthly bills.

Much of the evidence regarding Darrin's emancipation came from a diagnostic evaluation and treatment plan done by the Iowa Department of Social Services. The documents indicate that Darrin remains "in charge of his own rights." He is independent insofar as his self-care, feeding and hygiene. With regard to his job, Darrin willingly accepts all tasks, is friendly, accepting of authority, able to read and write, relates well to co-workers and is dependable. He likes to read about sports figures, collect toy trucks, write letters to friends, and he can use a calculator for math. Psychological reports indicate that Darrin is limited in his abilities for general learning, in using numbers to measure, and in performing arithmetic operations. It is suggested that Darrin needs practice in counting money and telling time.

Darrin's mother testified, when asked about the possibility of Darrin's moving to a group home situation or supervised independent living, that he does not want to move out of her home. She indicated that "[h]e's pretty adamant that he doesn't want to move out. We've discussed it, but he—he just doesn't want to leave right now." The Iowa Department of Human Services Report indicates that "Darrin reports that he has no plans to leave his mother's home for awhile due to income needs. In the future he might like to live in a more independent setting." However, he did not choose to implement a future residential placement goal. The trial court found that: (1) Darrin is not emancipated for the reason he is mentally incapacitated, unmarried, and unable to financially support himself independently; and (2) because he is not emancipated, there exists a continuing duty on the part of the father to provide support for his adult child. The trial court ruled that the parties' motion and cross motion to modify child support were denied and, as a result, child support in the sum of $100 per month remained in effect.

The father raises two points of trial error. First, he claims that Darrin is not mentally incapacitated from supporting himself because the evidence demonstrates that Darrin is employed at a minimum wage job, can handle his personal needs without supervision, and requires only occasional coaching at his job. In his second point, he argues that the trial court erred in finding that Darrin was insolvent in that the evidence indicated that Darrin is paying his monthly bills as they come due, and is able to move from his mother's residence but has chosen not to do so.

Our review is governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc.1976). We must uphold the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or the trial court erroneously declared or applied the law. *Id.* at 32. *See also Speight v. Speight*, 933 S.W.2d 879, 881 (Mo.App.1996). This court is to defer to the trial court's determinations as to witness credibility and the evidence, which is to be viewed in the light most favorable to the judgment. *Mason v. Mason*, 873 S.W.2d 631, 633–34 (Mo.App.1994).

Generally, the obligation of a parent to support a child terminates at age 18. *Locke v. Locke*, 901 S.W.2d 912, 915 (Mo.App. 1995). Section 452.340.3, RSMo 1994, states that: "Unless the circumstances of the child manifestly dictate otherwise and the court specifically provides, the obligation of a parent to make child support payments shall terminate when the child: ... (5)[r]eaches the age of eighteen." *Id.* Both parties agree that Darrin has reached the age of 18. However, Section 4 of the statute extends the duty to support past the age of 18 in the case of an incapacitated child. § 452.340.4, RSMo 1996.

In order to establish incapacitation, the child must be shown to be: (1) physically or mentally incapacitated from supporting himself; (2) insolvent; and (3) unmarried. *Speight*, 933 S.W.2d at 882. The evidence needed to show these elements must be substantial. *Id.* (citing *State ex rel. Albert v. Sauer*, 869 S.W.2d 853, 855 (Mo.App.1994)).

In *Speight*, this court overruled the trial court's determination of mental incapacity, which was based only on the mother's lay testimony that there was something "emotionally wrong" with the adult child and he was "full of anger." 933 S.W.2d at 882.

In *Mason v. Mason*, the court determined that, pursuant to § 452.340, a child's disability "must actually render the child unable to earn a living in any type of job." 873 S.W.2d at 637. As such, a 20 year-old's "lack of commitment towards college or employment would, therefore, not in and of itself, signal that the child has special needs requiring extraordinary support." *Id.* (citing *Harris v. Rattini*, 855 S.W.2d 410, 412 (Mo.App.1993)) (ruling that the evidence that an adult child had trouble learning does not support a determination of physical or mental incapacitation rendering him unable to support himself).

In *State ex rel. Albert v. Sauer*, the court determined that there was a failure to offer substantial evidence on all the requirements of § 452.304.4, 869 S.W.2d at 855, because there was no evidence presented as to the amount of the adult child's earnings and expenses, and the statute requires "[s]ome evidence of the child's earnings, living expenses and ability to meet obligations." *Id.* (citing *In re the Marriage of D.R.S. and P.W.S.*, 817 S.W.2d 615, 618 (Mo.App.1991)). Furthermore, the evidence showed that the adult child could become self-supporting with proper training, and therefore, the court reversed the finding of emancipation. *Id.*

The court in *In re the Marriage of D.R.S.* held that letters of guardianship establishing that a child had been adjudicated to be an incapacitated person established that the child was "mentally incapacitated" pursuant to § 452.340. 817 S.W.2d at 618. Furthermore, the issue of whether an adult child could have supported herself was addressed by the mother's testimony that she supplied almost all of the child's living expenses, the child's meager earnings, and evidence that the child was only able to save $1500 to replace her car. *Id.* With regard to insolvency, the court ruled that the foregoing facts also establish that she cannot meet the obligations she incurs in the "ordinary course of living." *Id.*

In the present case, there is no dispute that Darrin is mildly retarded and unmarried. He is unable to consistently meet his financial needs. As such, the issue is whether Darrin's mental incapacity prevents him from adequately supporting himself. First, the father claims that there was no evidence to establish that Darrin's mental incapacity impairs his ability to support himself.

In the case of *Racherbaumer v. Racherbaumer*, the father, attempting to establish his son's emancipation, argued that the evidence showed that his mentally incapacitated son was "financially self-supporting." 844 S.W.2d 502, 505 (Mo.App.1992). The court ruled that the father was arguing an incorrect standard, and that the appropriate measurement was "insolvency," defined as "the inability to pay debts as they become due in the ordinary course of business." *Id.* (quoting *D.R.S.*, 817 S.W.2d at 618). The court looked at the evidence regarding the adult child's earnings and expenses at his mother's home and determined that the trial court could reasonably conclude that the adult child was insolvent. *Id.*

At trial, Darrin's mother testified that the possibility of living outside her home was never pursued, as Darrin wanted to remain at home. More significantly, she testified that Darrin was unable to handle his own money, must be given an allowance for spending money on video games, and some months, he was unable to contribute his share of the monthly household expenses, while still meeting his own personal needs. On the other hand, Darrin's father testified that he assumed that Darrin could get a full-time job and be able to support himself outside his mother's home. Apparently the trial court did not find the father's testimony persuasive. No other evidence was presented regarding Darrin's ability to gain additional employment. Our review of the record indicates that the evidence reasonably supports the trial court's conclusion that Darrin is unable to meet his financial needs given his existing living arrangements with his mother without financial contributions from her.

In his second point, the father contends that the trial court's determination that Darrin is insolvent is also not supported by the record. He claims that insolvency, in the context of § 452.340.4, is "the inability to pay debts as they come due in the ordinary course of business." *In re the Marriage of D.R.S.*, 817 S.W.2d at 618. Since the father claims that Darrin is capable of being employed on a full-time basis, and is apparently capable of moving to his own independent living situation or group home, he cannot be found to be insolvent. As discussed *supra*, we have determined that the trial court did not err in finding that Darrin is insolvent because the evidence sustained the mother's contentions that he is not capable of earning an income sufficient to live outside of the home.

Judgment affirmed.

LAURA DENVIR STITH and EDWIN H. SMITH, JJ., concur.