**Donna Kay CLARK, Respondent,**

v.

**David Lee CLARK, Appellant.**

No. WD. 57116.

Missouri Court of Appeals, Western District.

June 20, 2000.

Paul Graham, Jefferson City, for respondent.

Bruce Cohen, Clayton, for appellant.

Before: Chief Judge
BRECKENRIDGE, Judge
LOWENSTEIN and Judge SPINDEN.

HAROLD L. LOWENSTEIN, Judge.

## I. FACTS

This case involves a modification of a child custody award where the child, a year prior to reaching the age of majority, went to live with the non-custodial parent. In this action formally changing custody, the question arose as to whether the child, then eighteen, was emancipated for the purposes of determining support. § 452.340.3 and .4, RSMo, Cum.Supp.1999.

The facts, as determined by the trial court, are as follows: On June 3, 1997, Respondent Donna Clark (hereinafter "Mother") filed a Motion to Modify child custody and support for her daughter, Jeannie Marie Clark (hereinafter "Daughter"). The marriage of Mother and Appellant David Clark (hereinafter "Father") had been previously dissolved, and Daughter had been in the custody of Father. However, in May 1997, Daughter changed her residence to that of Mother.

Hearing on Mother's motion to modify was held on November 6, 1998, subsequent to Daughter's majority. Daughter testified at the hearing. Daughter reported that she had recently passed out once a day, falling if she was standing. She was not always able to bathe or dress herself without assistance. Her right hand shook, she had minimal strength in that hand, causing her to drop things. Additionally, the trial court observed and stated for the record that as Daughter sat in the court room, she had an obvious difficulty speaking and that she demonstrated a palsy, shaking her head from side to side. Mother also testified at the hearing, presenting testimony as to Daughter's expenses, her inability to pay those expenses and her lack of employment.

At the hearing on the motion to modify, Barbara G. Bauer, Ph.D., testified as a witness. Dr. Bauer is a licensed psychologist who was seeing Daughter as a patient. Dr. Bauer testified that Daughter presented to her with complaints of a "seizure disorder" that caused her to have a "partial loss of consciousness" and "episodes of falling down." Dr. Bauer witnessed two of these seizures while examining Daughter and felt Daughter was not faking her symptoms. Dr. Bauer further testified

that Daughter's condition "is getting worse. I've noticed the tremor has definitely become marked." She said Daughter still had considerable speech impairment. Dr. Bauer testified that she did not know the origin of Daughter's problem, that she could not give a medical diagnosis. Additionally, she testified that, in her opinion, Daughter was not able to hold employment, stating that "she would be in danger of doing harm to herself from the loss of consciousness...I think it's also a safety concern...I think that would be very difficult for her to go on about a day's normal activities, and potentially quite dangerous." She opined, "[I]t's my impression that [Daughter] is, at this time, and for the last period of time that I've been seeing her, incapable of holding employment or going to school." When asked about neurological records received by her from Boone Hospital Center Neurodiagnostic Laboratory, Dr. Bauer testified the records described Daughter as having "clinical seizure-like activity without the presence of abnormal electroencephalographic activity."

The trial court awarded Mother custody of Daughter and ordered Father to pay $456.00 a month in child support. The court found Daughter was not emancipated on her eighteenth birthday as a result of physical incapacity and awarded child support on that basis. Specifically, the court found:

4. The court finds that on August 25, 1998, and at all times subsequent to that date, [Daughter] has remained and is physically incapacitated from supporting herself in that she has and continues to suffer from a progressive seizure disorder of undiagnosed etiology...and that as a result of this condition she cannot safely perform work in the marketplace.

On the issue of child support, the court found that Father's average monthly income in 1997 was $2,729.20, and his average monthly income in 1998 was $4,433.00. The court used these income figures on its Form 14 to determine the award of child support. The court set Father's child support obligation at $456.00 per month. Additionally, the court found that Mother had incurred nearly $9,000.00 in expenses and, finding Father able to pay same, ordered him to pay $5,000.00 of Mother's fees.

Father has appealed that decision to this court. He asserts the trial court erred in (1) finding Daughter was not emancipated on her eighteenth birthday because there was presented no vocation evidence that Daughter was unable to earn a living in any kind of job and no medical evidence of any incapacity, (2) failing to make specific findings in its judgment of modification after such findings were requested by Father, and (3) awarding child support and attorney fees based on findings as to the number of Father's dependents and Father's earnings which were not supported by the evidence.

## II. STANDARD OF REVIEW

On appeal from a court-tried case, the standard of review is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). The judgment of the trial court must be affirmed unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Id.* at 32.

## III. ANALYSIS

### A.

Father's first point is that the trial court erred in declaring Daughter was not emancipated due to physical incapacity because there was no evidence she was unable to earn a living in any kind of job and no medical evidence of incapacity. Specifically, Father argues in his point relied on:

The trial court erred in finding that [Daughter] was not emancipated on her eighteenth birthday in accordance with Missouri Revised Statutes Section 452.340.3, in that Ms. Clark has voca-

tional skills and there is no vocational evidence that she is unable to earn a living in any kind of job, and no medical evidence of any incapacity which prevents Ms. Clark from supporting herself.

According to § 452.340.4, RSMo 1994, if "the child is physically or mentally incapacitated from supporting himself and insolvent and unmarried, the court may extend the parental support obligation past the child's eighteenth birthday." "The evidence needed to show these elements must be substantial." *Speight v. Speight,* 933 S.W.2d 879, 882 (Mo.App.1996). Father contests the sufficiency of the evidence as to Daughter's physical incapacity. This court does not agree.

There was sufficient evidence produced at the hearing as to Daughter's physical incapacity. First, there was Daughter's own testimony as to her physical state. This court defers to the trial court's determination on issues of witness credibility. *Mehra v. Mehra,* 819 S.W.2d 351, 353 (Mo. banc 1991). Additionally, the trial court observed and noted for the record Daughter's physical symptoms. Still further, the court heard the lengthy testimony of Dr. Bauer, a licensed psychologist who was seeing Daughter as a patient. Dr. Bauer testified as to Daughter's physical symptoms, which she personally observed, and opined that Daughter was not able to hold employment.

Father cites to the cases cited within *King v. King,* 969 S.W.2d 903 (Mo.App. 1998) and *Speight v. Speight,* 933 S.W.2d 879 (Mo.App.1996) in support of his argument that a finding of incapacity was not supported by the evidence. This case is distinguishable from those cases cited by Father.

Father cites to *Mason v. Mason,* 873 S.W.2d 631 (Mo.App.1994) in which the court held that a child's disability "must actually render the child unable to earn a living in any type of job." *Id.* at 637. Therefore, a child's "lack of commitment towards college or employment would...not in and of itself, signal that the child has special needs requiring extraordinary support." *Id. Mason* is distinguishable from the case at bar. Contrary to a case where the only evidence presented was that the child showed a "lack of commitment" toward employment, in this case evidence was presented by Dr. Bauer, a licensed psychologist, as to Daughter's inability to hold employment. Additionally, the court presumably relied upon Mother and Daughter's testimony and the court's own observation of Daughter's physical capabilities when making its ruling that Daughter was incapable of holding employment.

Father additionally cites to *State ex rel. Albert v. Sauer,* 869 S.W.2d 853 (Mo.App. 1994) wherein the court determined § 452.340.4 requires "[s]ome evidence of the child's earnings, living expenses and ability to meet obligations." *Id.* at 855. Again, *Albert* is distinguishable from this case. Here, Mother presented testimony as to Daughter's expenses, lack of income and inability to meet her obligations.

*In re the Marriage of D.R.S. and P.W.S.,* 817 S.W.2d 615, 618 (Mo.App.1991) is also cited by Father, however, that case actually supports finding against Father. The court there held that "the issue of whether an adult child could have supported herself was addressed by the mother's testimony that she supplied almost all of the child's living expenses [and evidence of] the child's meager earnings...With regard to insolvency, the court ruled that the foregoing facts also establish that she [the child] cannot meet the obligations she incurs in the 'ordinary course of living.'" *King,* 969 S.W.2d at 906, citing *D.R.S.,* 817 S.W.2d at 618. As noted above, in this case, Mother testified as to Daughter's expenses and earnings. The *D.R.S.* court found such testimony adequate on the issue of the child's ability to support herself, and this court agrees.

Finally, Father cites to *Speight supra,* 933 S.W.2d at 882 in which the court wrote, "[e]vidence introduced to establish incapacity and need might include medical

testimony, letters of guardianship, living expenses and ability to meet obligations." First, the *Speight* court did not establish a checklist of evidence which *must* be introduced in order to establish incapacity. The holding was simply that the evidence *might* include certain items. The court finds there was sufficient evidence presented to establish Daughter's incapacity, and the *Speight* decision does not alter that determination.

Also without merit is Father's argument that the court needed an opinion from a vocational expert to render a decision that Daughter was incapable of employment. On these facts, the court's decision was supported by substantial evidence. This point is denied.

### B.

 Father's second point is that the trial court erred in not issuing specific findings of fact which were requested by Father. Rule 73.01(a)(3), upon which Father relies, reads as follows:

> The court shall render the judgment it thinks proper under the law and the evidence...The court may, or if requested by a party shall, include in the opinion findings on the controverted fact issues specified by the party.

In this case, the trial court in fact issued findings as to every material fact. Certain of the findings Father requested related to wholly irrelevant issues. The court in *In re·Marriage of Flud*, 926 S.W.2d 201 (Mo. App.1996) held:

> [F]ailure of a trial court to issue findings which were properly requested does not always require reversal. *Lattier v. Lattier*, 857 S.W.2d 548, 549 (Mo.App.1993). If the record is sufficient to support the judgment, the appellate court will affirm. *Id.*

*Flud*, 926 S.W.2d at 204. The record is sufficient to support the trial court's judgment. Findings were issued as to all material issues. Point denied.

### C.

Father's final point is that the trial court erred in awarding child support and attorney fees in the given amounts because the Form 14 adopted by the court contained mathematical errors and incorrect information. Father asserts the income imputed to him was in error, and also that the number of dependents for whom Father should receive support credit was incorrectly listed. Father's point is simply insufficient. He cites to no authority for his argument, outside of the standard of review. "Where, as here, the appellant neither cites relevant authority nor explains why such authority is not available, the appellate court is justified in considering the points abandoned..." *In re Marriage of Spears*, 995 S.W.2d 500, 503 (Mo.App.1999) citing *Shiyr v. Pinckney*, 896 S.W.2d 69, 71 (Mo.App.1995). This point is deemed abandoned.

The judgment of the trial court is affirmed.

All Concur.