**Susana SULLINS, Appellant,**

v.

**John R. KNIERIM, Respondent.**

**No. ED 92849.**

Missouri Court of Appeals, Eastern District, Division Four.

March 23, 2010.

Aaron S. Dubin, Michael J. Payne, Clayton, MO, for appellant.

Mary Ann Weems, Clayton, MO, for respondent.

GARY M. GAERTNER, JR., Judge.

### Introduction

Appellant Susana Sullins (Mother) appeals from the trial court's Findings of Fact, Conclusions of Law and Judgment (Judgment), which declared the parties' daughter (Daughter) emancipated, determined that John Knierim (Father) was not obligated to contribute to certain past expenses for Daughter, and denied Mother's request for attorney's fees. Mother asserts five points on appeal: (1) the trial court erred in finding Daughter emancipated because substantial uncontroverted evidence demonstrated that Daughter was "mentally and vocationally incapacitated" from supporting herself under Section 452.340.4, RSMo,[1] entitling Mother to continued child support; (2) the court erred, abused its discretion, and misapplied Section 452.340.5, because the uncontroverted evidence demonstrated that Daughter had been diagnosed with a developmental disability, as defined in Section 630.005, or had a diagnosed health problem that limited her ability to carry the requisite number of credit hours per semester; (3) the court improperly relied on excluded evidence and misapplied Section 452.340.5 in that failure to comply with notice requirements does not emancipate a minor child; (4) the court erred in denying Mother's request for retroactive modification of the child support amount; and (5) the court erred in denying Mother's request for attorney's fees. We affirm in part and reverse in part, and we remand for further proceedings in accordance with this opinion.

### Background

The parties' marriage was dissolved in 1996. The dissolution judgment awarded Mother primary legal and physical custody and ordered Father to pay $571.96 per month for support of the two children born of the marriage: a son (Son), born in 1984 and emancipated in 2003, and Daughter, born on April 6, 1988. The dissolution judgment ordered that the parties "shall confer" with each other on decisions affecting the children's education, including special tutoring; and that the parties would be bound by the recommendations of the children's school regarding the need for, inter alia, special tutoring. The judgment did not provide for payment of college expenses. The judgment also failed to provide for reduced payments for one child upon Son's emancipation; and in 2004, Father filed an amended motion to modify the child support amount in light of Son's emancipation. In 2005, Mother filed a counter-motion to determine Father's liability for, inter alia, tutoring expenses incurred for Daughter through Sylvan Learning Center (Sylvan).

In 2006, Mother filed a counter-motion to modify the judgment of modification requesting the court (1) to extend Father's child support obligation after Daughter reached the statutory age of majority, because she was physically or mentally incapacitated from supporting herself, unmarried, and insolvent; (2) to increase the child support amount in accordance with the Guidelines, retroactive to the date of filing; and (3) to order Father to contribute to post-secondary or vocational training expenses. In June 2008, Father filed a second amended motion to modify seeking to declare Daughter emancipated, because although she had been enrolled in Jefferson College beginning in the Fall of 2007, she had not been taking the required number of credit hours. Both parties sought reasonable attorneys' fees from the other.

---

1. All statutory references are to RSMo Stipp. 2008, unless otherwise indicated.

At a November 2008 hearing, the following evidence was adduced. Kevan Rzeppa (Rzeppa), a licensed professional counselor employed by the Missouri Department of Elementary and Secondary Education, Department of Vocational Rehabilitation (MDVR), testified that in 2007, Daughter applied for and was granted vocational services at the Priority II level, which is the category assigned to "eligible individual[s] with a significant disability." MDVR defines a significant disability as one that seriously limits one or more functional capabilities in terms of an employment outcome, and that can be expected to require multiple vocational rehabilitative services over an extended period of time. Rzeppa determined from Daughter's records that Daughter had borderline intellectual functioning with maladaptive behaviors, which seriously limited her functional capabilities in the category of work skills, specifically in the areas of reading, writing, and comprehending new materials. Rzeppa testified that Daughter's vocational goal was to be a teacher's assistant or daycare teacher, and Rzeppa estimated that it would take Daughter until approximately May 2011 to achieve her vocational goals. On cross-examination, Rzeppa stated that she knew of no limitations that would prevent Daughter from working full time.

Daughter's MDVR file, admitted at trial, included her 2007 Individualized Education Plan (IEP), which noted a 2000 diagnosis of "unspecified disorder of the nervous system" that affected her abilities to read, write, and comprehend material presented in class. The IEP noted that her 2007 Full Scale IQ score of 75 placed Daughter in the borderline range of intelligence, and that she was enrolled in a mix of special education and regular classes. Daughter's high school Senior Evaluation Report stated her classification as "other health impaired" (OHI), noting her weaknesses in mathematics, written language and reading; but further stated that her deficits did not appear to be caused by, inter alia, "auditory or visual acuity deficits, motor deficits, mental retardation, [or] behavioral/emotional disturbance."

Daughter's MDVR file also included a 2008 report entitled "psychoeducational test results and analysis," noting that the results of her multidisciplinary evaluations were "consistent with one who has borderline intellectual functioning as both [her] FSIQ [was] in the borderline range [and] her WIAT Composite score [was] in the extremely low range." The report further stated Daughter's test results supported a diagnosis of language impairment, her language deficits "significantly impact[ed] her school performance," and her academic behaviors were "of such frequency, duration, and intensity that they are markedly atypical and a function of [Daughter]'s learning disability."

Sundaye Harrison (Harrison), the disability services coordinator at Jefferson College, testified that Daughter provided documentation of her OHI disability, and was given accommodations in the form of extended time, alternate testing locations, peer tutoring, and reduced course load. She specified that Daughter would only have to maintain one credit hour to be eligible for enrollment.

Harrison further testified that Daughter entered Jefferson College on a scholarship through the A+ Program in 2007. In the 2007 fall semester, Daughter completed five credit hours; she completed twelve credit hours in the 2008 spring semester; and was, at the time of the trial, enrolled in nine credit hours in the 2008 fall semester. Daughter remained in good standing, but because she dropped a class in the 2008 spring semester, she lost her scholarship through the A+ Program.

Father testified that he had not received documentation regarding Daughter's enrollment in Jefferson College, including transcripts, her class schedule, grades, or costs; except that, upon his request, she twice sent him grades, and Mother sent him two bills, once for books and once for tuition after Daughter lost her A+ status. He agreed that he had not paid any money towards Daughter's college expenses. Upon objection by Mother's counsel, the trial court determined Father could not use this evidence of Daughter's failure to comply with the statutory notification requirements as a basis for emancipation, because Father had not included this basis for emancipation in his pleadings. Father made an offer of proof.

Regarding child support, Father testified that he was no longer requesting that his child support obligation be reduced, and that he would voluntarily pay child support for Daughter until her twenty-first birthday in April 2009 in the amount ordered by the dissolution judgment. Regarding Sylvan fees, he testified that Mother did not notify him that she had enrolled Daughter in Sylvan until she requested he contribute to the fees. On cross-examination, Father agreed that he attended a 2004 IEP meeting at Daughter's school, and that he did not make any requests from Jefferson College for information.

Mother testified that she believed Daughter was mentally incapacitated and unable to support herself. Although Daughter had worked part-time since high school, Mother testified that she controlled Daughter's finances because Daughter had difficulty doing simple mathematics, bounced checks, and incurred very large cell-phone bills. She had not, however, set up a guardianship for Daughter or sought to have her declared incapacitated; nor was Daughter eligible to receive social security or disability benefits. Further, in May 2008, Daughter was admitted for three weeks in an outpatient program at St. Anthony's for depression and suicidal tendencies.

Regarding Sylvan, Mother agreed that she told Father about Sylvan after Daughter enrolled, but asserted that Father knew of her intention to enroll Daughter before the fact because he attended an IEP meeting in 2004 where a representative from Sylvan was also present, Mother acknowledged, however, that at the 2004 IEP meeting the school did not recommend Daughter get tutoring through Sylvan; rather, Daughter's teacher stated that free tutoring was available through the school. Mother requested that Father be ordered to pay one-half of (1) the bills from Sylvan, (2) a June 2008 doctor's bill, (3) co-payments and bills for Daughter's May 2008 treatment at St. Anthony's, (4) medication co-payments incurred in 2008, and (5) college expenses from Jefferson College, including books, fees, meal plan, transportation, and tuition incurred after Daughter lost her scholarship.

The trial court instructed the parties to submit Proposed Findings and Conclusions of Law and Judgment. The court adopted Father's proposed judgment, which determined the following, as relevant. Daughter had been diagnosed with a learning disability for which she received academic accommodations, but she had not been diagnosed with a physical or mental disability. There was insufficient evidence to establish that Daughter qualified for extended support under Section 452.340.4, in that she was not mentally incapacitated from supporting herself. Daughter emancipated on January 31, 2008, because, although attending an institute of higher education, she was not enrolled in nine credit hours per semester and not working 15 hours per week, and she was not diag-

nosed with a developmental disability as defined in Section 630.005, which would have allowed her to continue receiving support under Section 452.340.5 despite taking fewer than the required number of credit hours. Further, because Daughter did not comply with the notification requirements under Section 452.340.5 by providing Father with official transcripts at the beginning of each semester, Daughter failed to qualify for continued support. Thus, Father's child support obligations were satisfied. The court noted, however, that Father had agreed to pay the current child support amount until Daughter's twenty-first birthday. The trial court calculated—pursuant to its own Form I4—Father's child support obligation to be $561 per month, and denied Mother's request for a retroactive award.

As to Father's liability for certain expenses, the court determined (1) Father was not obligated to contribute to Daughter's accrued college expenses, because the dissolution judgment did not provide for payment of college expenses and Daughter had not complied with the notice requirements of Section 452.340.5; (2) Father was not obligated to contribute to Daughter's Sylvan costs, because the dissolution judgment required the parties confer with each other on decisions involving special tutoring unless recommended by the school, but Mother did not confer with Father prior to Daughter's enrollment and the school did not recommend Sylvan; and (3) Father was not obligated to contribute to uncovered, unreimbursed medical expenses incurred after Daughter's January 2008 emancipation. Last, the court made no award of attorneys' fees, determining that each party was capable of paying his or her own attorney's fees.

Mother moved for a new trial, or in the alternative, to amend the judgment. The court denied her motion, but amended the judgment, nunc pro tunc, to eliminate the word "proposed" from the title.

*Standard of Review*

Our review of a trial court's order granting a motion for emancipation and termination of child support is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), under which we must affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Kerr v. Kerr*, 100 S.W.3d 912, 914 (Mo. App. W.D.2003). Further, we view the evidence in a manner favorable to the judgment and disregard contrary evidence, and we defer to the trial court even if the evidence could support a different conclusion. *Wynn v. Wynn*, 738 S.W.2d 915, 918 (Mo.App. E.D.1987).

We review for abuse of discretion a trial court's decision regarding the retroactivity of an award of child support, and a trial court's decision to award attorneys' fees. *Downard v. Downard*, 292 S.W.3d 345, 349–50 (Mo.App. E.D.2009).

*Discussion*

*Point I*

In her first point on appeal, Mother contends that the trial court erred in finding Daughter emancipated because substantial uncontroverted evidence demonstrated that Daughter was "mentally and vocationally incapacitated" under Section 452.340.4. Generally, the obligation of a parent to support a child ends at the age of 18. Section 452.340.3(5); *Locke v. Locke*, 901 S.W.2d 912, 915 (Mo.App. E.D. 1995). Section 452.340.4, however, extends the child support obligation if the child is mentally incapacitated from supporting himself, insolvent, and unmarried. In the present case, there is no dispute that Daughter is unmarried and insolvent, and

the only issue is whether Daughter is mentally incapacitated from supporting herself. We conclude that she is not. The evidence of Daughter's learning disability presented at trial was insufficient to meet the stringent requirements of Section 452.340.4.

The evidence needed to support a finding of mental incapacity is "substantial." *King v. King*, 969 S.W.2d 903, 905 (Mo. App. WD.1998). Evidence merely that an adult child has trouble learning does not support a determination of mental incapacity. *Harris v. Rattini*, 855 S.W.2d 410, 412 (Mo.App. E.D.1993). Mild mental retardation[2] can support a finding of mental incapacity. *King*, 969 S.W.2d at 906. The facts here, however, show that Daughter's most recent Full Scale IQ scores indicate that she has "borderline intellectual functioning" rather than mild mental retardation.

Further, a parent's duty to provide continuing child support may be triggered by the helplessness of the child, such as when the child is unable to earn a living in any type of job. *Mason v. Mason*, 873 S.W.2d 631, 637 (Mo.App. E.D.1994). Here, there was no evidence presented that Daughter was unable to earn a living in any type of job. Rather, the evidence showed that Daughter had been engaged in part-time employment for several years while in high school and college; the witnesses knew of no limitation that would prevent Daughter from working full time if she were not in school; and she intended to work full time as a teacher's assistant or daycare teacher after finishing her schooling. We find there was sufficient evidence to support the trial court's finding that Daughter was not mentally incapacitated.

Point denied.

## Point II

In her second point on appeal, Mother argues that the court erred, abused its discretion, and misapplied Section 452.340.5, because the uncontroverted evidence demonstrated that Daughter had been diagnosed with a developmental disability, as defined in Section 630.005, or had a diagnosed health problem that limited her ability to carry the requisite number of credit hours per semester.

Section 452.340.5 extends the child support obligation to age twenty-one if the child is enrolled in and attending an institution of vocational or higher education; taking at least twelve credit hours per semester (or nine credit hours and working fifteen hours per week); and complies with all other requirements of the statute, including the requirement that at the beginning of each semester the child "shall submit" to both parents a transcript or official document listing the courses the child is enrolled in and has completed for each term, the grades and credits received, and the courses which the child is enrolled in for the upcoming term. If the non-custodial parent requests grades, the child "shall" produce the required documents within 30 days of their receipt. Section 452.340.5 also provides, however, that if the child has been diagnosed with a developmental disability, as defined in Section 630.005,[3] or has a diagnosed health prob-

---

**2.** Mental retardation was the diagnostic term used in the record below and in prior case law.

**3.** A developmental disability is defined as a disability:

(a) Which is attributable to:

    a. Mental retardation, ... or a learning disability related to a brain dysfunction; or

    b. Any other mental or physical impairment ...; and

(b) Is manifested before the person attains age twenty-two; and

(c) Is likely to continue indefinitely; and

lem that limits the child's ability to carry the number of credit hours prescribed in this subsection, the child "shall remain eligible for child support so long as such child is enrolled in and attending an institute of. higher education, and the child continues to meet the other requirements of this subsection." Section 452.340.5.

It was established at trial that Daughter did not continuously enroll in and complete the required number of credits per semester: in the 2007 fall semester at Jefferson College, she only completed five credit hours. Accordingly, the trial court found Daughter to be emancipated as of January 2008. The issue is whether Daughter had a developmental disability or a diagnosed health problem that prevented her from carrying the number of credit hours prescribed in this subsection. The trial court determined that she did not have a developmental disability, and failed to address whether she had a diagnosed health problem.

The uncontroverted evidence adduced at trial was that Daughter had a learning disability that significantly affected her ability to read, write, and comprehend materials presented in class. Rzeppa, a licensed counselor, diagnosed Daughter as having borderline intellectual functioning with maladaptive behaviors, which seriously limited her functional capabilities in the category of work skills. Further, Daughter had been diagnosed in 2000 with an "unspecified disorder of the nervous system" that affected her reading, writing, and comprehension abilities. Both the State of Missouri and Jefferson College recognized Daughter's disability and provided her with ongoing services and accommodation.

We find the trial court's determination that Daughter did not have a developmental disability was against the weight of the evidence and misapplied the law. At a minimum, Daughter had a mental impairment that manifested before the age of 22; was likely to continue indefinitely; resulted in substantial limitations in the areas of receptive and expressive language development and use, and learning; and for which she received individually planned services of extended duration. Section 630.005(9); *Brown v. Dir. of Revenue*, 164 S.W.3d 121, 125 (Mo.App. E.D.2005) ("If the evidence is uncontroverted or admitted so that the real issue is a legal one as to the legal effect of the evidence, then there is no need to defer to the trial court's judgment.") (internal quotation and citation omitted).

■ Further, we find that Daughter's developmental disability or a diagnosed health problem prevented her from carrying the number of credit hours prescribed in this subsection. The legislature intended for the courts to apply Section 452.340.5 broadly. *Thompson v. Dalton*, 914 S.W.2d 811, 813 (Mo.App. W.D.1995). Where the evidence demonstrates that the child intends and has taken the necessary steps to complete his education but is unable to complete some classes due to a learning

(d) Results in substantial functional limitations in two or more of the following areas of major life activities:
 a. Self-care;
 b. Receptive and expressive language development and use;
 c. Learning;
 d. Self-direction;
 e. Capacity for independent living or economic self-sufficiency;

 f. Mobility; and
(e) Reflects the person's need for a combination and sequence of special, interdisciplinary, or generic care, habilitation or other services which may be of lifelong or extended duration and are individually planned and coordinated[.]
Section 630.005(9).

disability or medical condition, then emancipation is not appropriate. *Id.*; *see also Pickens v. Brown,* 147 S.W.3d 89, 92–93 (Mo.App. W.D.2004) (extending parent's child support obligation where child was unable to complete classes due to attention deficit hyperactivity disorder). Here, the evidence demonstrated that Daughter was actively pursuing her education and was in good standing at Jefferson College, but that her learning disability prevented her from completing all of her courses. Thus, the court erred in determining that Daughter emancipated because she failed to take the required number of credits.

Having established that Daughter's learning disability extended Father's child support obligation while she was still enrolled in an institute of vocational or higher education, we next consider how long this extension must last. Section 452.340.3 provides that the obligation of a parent to make child support payments shall terminate when the child reaches the age of twenty-one, unless subsection four (mental or physical incapacity from supporting himself) applies. Section 452.340.3(6). Because we have already determined that Daughter is not mentally incapacitated from supporting herself, we find that Father's child support obligation ended with her twenty-first birthday, and not before.

■ There are two potential errors stemming from the trial court's order of emancipation. First, the court's determination that Father had satisfied all child support obligations as of January 31, 2008 is in error, because Father was obligated to pay $561 per month for Daughter's support until her twenty-first birthday. The parties agreed at oral arguments that Father voluntarily paid child support for Daughter until her twenty-first birthday; therefore, we can grant no relief on appeal and the error is moot. See *Promotional Consultants., Inc. v. Logsdon,* 25 S.W.3d 501, 506 (Mo.App. E.D.2000). Second, because Daughter did not emancipate until her twenty-first birthday, Father would be obligated to pay for qualifying medical expenses incurred between the trial court's stated emancipation date of January 31, 2008 and April 6, 2009, such as the June 2008 doctor's bill, co-payments and bills for Daughter's May 2008 treatment at St. Anthony's, and medication co-payments incurred in 2008. Thus we remand for the trial court to determine Father's obligation for amounts owing in accordance with the dissolution judgment.

Point granted.

### Point III

In her third point on appeal, Mother asserts that the court improperly relied on excluded evidence and misapplied Section 452.340.5 in that the failure to comply with notice requirements does not emancipate a minor child. We need not address these assertions, because our earlier determination of error likewise disposes of this point.

Point denied.

### Point IV

■ In her fourth point on appeal, Mother contends that the court erred in denying her request for a retroactive modification of the child support amount. The court has significant discretion in making an award of child support retroactive to the date of filing. "We will not disturb that judgment absent an abuse of discretion such that the choice of effective date is clearly against the logic of the circumstances and is so arbitrary and capricious as to shock the sense of justice and indicate a lack of careful consideration." *Downard,* 292 S.W.3d at 349. Here, the court found that Father had been paying child support for both children until the date of the 2008 trial, despite Son's emancipation in 2003; and that the presumed

child support amount calculated pursuant to the Guidelines was less than what Father had been paying since the original dissolution judgment. Under the circumstances, the court's choice was not against the logic of the circumstances, and was well within its discretion.

Mother has not asserted error in the trial court's calculation of the child support amount; thus, we will not address the issue. Similarly, Mother's assertion—first raised in the argument section and not included in her points relied on—that the trial court erred in denying her request for reimbursement for Sylvan costs is not properly before this court. *Day ex rel. Finnern v. Day*, 256 S.W.3d 600, 602 (Mo. App. E.D.2008) (issues first raised in argument portion of brief and that are not encompassed by point relied on are not preserved for review on appeal).

Point denied.

### Point V

In her fifth point on appeal, Mother challenges the trial court's decision to deny her request for attorney's fees. The trial court has broad discretion in the award of attorney's fees and is considered an expert in the area; we will not disturb the court's decision absent an abuse of discretion. *Downward*, 292 S.W.3d at 350. We find no abuse of discretion here.

Point denied.

### Conclusion

The judgment is affirmed in part and reversed in part.

KURT S. ODENWALD, P.J. concurs in separate opinion.

GEORGE W. DRAPER III, J. concurs.

KURT S. ODENWALD, Judge, Concurring.

I concur with the findings and holdings of this opinion. I write this separate concurrence to address the consequences of Section 452.340.5 on children who need additional help in their education due to a developmental disability or diagnosed health problem, and the dilemma presented by requiring the termination of child support at age twenty-one for such children.

Although the parental obligation for child support generally terminates at age eighteen, Section 452.340.5 extends the parental support obligation to age twenty-one if the child is enrolled in and attending an institution of vocational or higher education and taking at least twelve credit hours per semester (or nine credit hours and working fifteen hours per week). The legislature has recognized the need to address the educational circumstances of children with special educational requirements. Children diagnosed with a developmental disability, as defined in Section 630.005, or who have a diagnosed health problem that limits their ability to carry the number of credit hours prescribed in this subsection, remain "eligible for child support so long as such child is enrolled in and attending an institute of ... higher education, and the child continues to meet the other requirements of this subsection." Section 452.340.5. The minimum credit hour requirement per semester may be waived for children having a developmental disability or diagnosed health problem.

Waiving the minimum hour requirement for children with special educational needs is necessary and just, but may require additional time for such students to complete the course work for their degree. This delay reasonably may require students with developmental disabilities or diagnosed health problems to continue their

education beyond the age of twenty-one. However, Section 452.340.5 does not mandate a continuation of the parental support obligation beyond the age of twenty-one for children who are legitimately pursuing their education under the credit hour waiver provision of this statute. While Section 452.340.5 accommodates children with special educational needs by allowing them to schedule classes based upon individual ability and needs, a child who is unable to accomplish his or her educational goals by the age of twenty-one is seemingly penalized because that same statute does not consider or accommodate the additional time needed beyond the age of twenty-one for such children to complete their education.

I agree with the majority that the trial court's finding that Daughter did not have a developmental disability was against the weight of the evidence and misapplied the law. However, reversing the trial court's finding does nothing to require the continuation of the parental support obligation for Daughter as she attempts to complete her education because Daughter already has reached the age of twenty-one. Hence, we are presented with a practical dilemma not addressed by Section 452.340.5. Under the law, Daughter is entitled to carry a reduced workload each semester. But, doing so will necessarily extend the time required for Daughter to complete her education. The evidence is undisputed that Daughter was enrolled in a community college program with a vocational goal of working as a teacher's assistant or daycare teacher. The disability services coordinator at the community college confirmed Daughter's need for accommodations due to her disability. Testimony from a professional counselor employed by the Missouri Department of Elementary and Secondary Education, Department of Vocational Rehabilitation confirmed that Daughter needed until approximately May 2011, to achieve her vocational goals, long past Daughter's twenty-first birthday.

Because Father's parental support obligation terminated with Daughter's twenty-first birthday and Father is unwilling to voluntarily provide Daughter with financial support, Daughter may be forced to abandon her reasonable and legitimate educational and vocational goals in order to provide for her basic living needs. 1 question whether the legislature intended this consequence. Just as Section 452.340.4 allows a court to extend the parental support obligation under certain circumstances, the legislature may deem it appropriate to consider under what conditions, if any, a court may order the parent support obligation to continue beyond the age of twenty-one under Section 452.340.5.